## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BBAM Aircraft Management, LP, :
and BBAM US LP, :
: No. 20-cv-1056-VLB
Plaintiffs, :
:
v. : September 29, 2021
:
Babcock & Brown LLC, :
Burnham Sterling & Company LLC, :
Babcock & Brown Securities LLC, :
and Babcock & Brown Investment

Defendants.

### MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION TO DISMISS
### [Dkt. 39]

BBAM Aircraft Management LP and BBAM US LP (collectively "BBAM" or "Plaintiffs") bring this action against Babcock & Brown LLC, Babcock & Brown Securities LLC, Babcock & Brown Investment Management LLC, and Burnham Sterling & Company LLC (collectively "Babcock & Brown LLC" or "Defendants"), alleging trademark infringement, unfair competition, and false advertising under the Lanham Act as well as state and common law trademark and unfair competition claims. [Am. Compl., Dkt. 32]. Plaintiffs' operative complaint seeks cancellation of Defendants' registered trademarks and refusal of Defendants' pending trademark application. [*Id.*].

Before the Court is Defendants' motion to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in which Defendants argue that all of Plaintiffs' claims fail to state a claim upon which relief can be granted. [Mot., Dkt. 39]. Plaintiffs oppose. [Opp., Dkt. 43].

For the following reasons, Defendants' motion to dismiss is DENIED.

I.    BACKGROUND[1]

A.  Plaintiffs

Plaintiffs are an aircraft leasing and management company.  [Am. Compl. at ¶ 13].  Over the years, Plaintiff has been restructured and renamed. In 1989 or early 1990, Plaintiffs operated as a division of Babcock & Brown LP, an international investment advisory limited partnership.   [*Id.* at ¶ 15].  In 1992, Babcock & Brown LP incorporated Plaintiff under the name Babcock & Brown Aircraft Management, Inc. [*Id.*].  In 2001, Plaintiffs registered the BBAM word mark, Reg. No. 2,424,139, covering "lease business management, purchasing agent and commercial information agency, concerning leased assets, namely aircrafts."  [*Id.* at ¶ 17].

In 2010, Babcock & Brown LP sold substantially all of the assets of its subsidiary Babcock & Brown Aircraft Management, Inc. to Plaintiffs' current owners.  [*Id.* at ¶ 16].  Thereafter, Plaintiffs converted Babcock & Brown Aircraft Management, Inc. to a limited partnership and changed the corporate name to Babcock & Brown Aircraft Management LP.   [*Id.*].   Through the 2010 asset acquisition, Plaintiffs acquired ownership of the entire aircraft leasing business of Babcock & Brown and all assets of the Babcock & Brown Aircraft Management division, including the then existing leases and asset management relationships with major airlines, the exclusive joint marketing relationship with a third-party licensor, current employment contracts and relationships, physical assets, and

---

[1] For the purposes of the motion to dismiss, the Court accepts the well-pleaded factual allegations made within Plaintiffs' amended complaint as true.  *See infra*.

web domains.  [*Id.* at ¶ 16].  In addition, Babcock & Brown agreed that Plaintiffs would have exclusive use of the Babcock & Brown name in the aviation field ("BABCOCK & BROWN marks").  [*Id.*].

Shortly after the acquisition, in 2011, BBAM registered a BBAM logo,[2] which is the word BBAM with the "A" styled to look like the tail of an airplane.  [*Id.* at ¶ 17].  The BBAM logo registration covers "business management, purchasing agents and commercial information in the field of aircrafts."  [*Id.*].

Plaintiffs allege they have used the BABCOCK & BROWN marks continuously for more than 30 years throughout the United States.  [*Id.* at ¶ 18].  In establishing continuous use, Plaintiffs state they have used the Babcock & Brown name (1) directly, (2) through its subsidiary and related companies, and (3) via a joint-marketing partnership with a Japan-based corporation, Nomura Babcock & Brown.  [*Id.*].

With respect to direct use, Plaintiffs' website uses the BABCOCK & BROWN marks throughout and Plaintiffs use the marks in advertising.  [*Id.* at ¶¶ 20–21].  In addition, Plaintiffs allege that the aviation industry, including Plaintiffs' target customers, understand that BBAM is an abbreviation of Babcock & Brown Aircraft Management and associates the name with the BABCOCK & BROWN marks.  [*Id.* at ¶ 1].

Plaintiffs' use the BABCOCK & BROWN marks through its affiliated company, Fly Leasing Limited ("Fly").  [*Id.* at ¶ 22].  Fly is a NYSE-listed aircraft

---

[2] The BBAM logo and the BBAM word mark are to be referred to collectively as the BBAM marks.

3

lessor with a portfolio of 113 aircrafts that are exclusively managed by Plaintiffs. [*Id.*].  Plaintiffs have authorized Fly to use the BABCOCK & BROWN marks and Fly does use the marks.  [*Id.*]   Fly holds a number of aircraft leasing entities and investment vehicles that operate under the Babcock & Brown and B&B name.  [*Id.*]. For example, Fly has entities named Babcock & Brown Air Funding I Limited, Babcock & Brown Air Acquisition I Limited, B&B Air Funding 888 Leasing Limited, and other similar names.  [*Id.*].

Plaintiffs also use the mark in its joint-marketing partnerships. Plaintiffs use the BABCOCK & BROWN marks through an exclusive co-marketing partnership with Nomura Babcock & Brown.  [*Id.* at ¶ 25].  Nomura Babcock & Brown is a Japanese  investment company specializing in international aircraft leasing.  [*Id.* at ¶ 25].  This partnership is marketed by Plaintiffs to potential customers.  [*Id.* at ¶ 26].  The agreement with Nomura Babcock & Brown licenses Nomura Babcock & Brown to use "Babcock & Brown" or "B&B" in connection with joint transactions. [*Id.* at ¶ 27].  By agreement, Plaintiffs can terminate Nomura Babcock & Brown's license to use the marks.  [*Id.*].

B. <u>Defendants</u>

After BBAM was acquired in 2010, Michael Dickey Morgan—a former Babcock & Brown executive—co-founded Burnham Sterling, an aircraft advisory company that also leases aircrafts.  [*Id.* at ¶¶ 29–30].  In 2016, Burnham Sterling filed for the trademark "Burnham Babcock & Brown" for use in connection with investment banking and various types of financing and leasing.  [*Id.* at ¶ 30].  As of the filing of the amended complaint, the application remains pending.  [*Id.*].

4

In or around 2013, B&B Securities was formed under the name Burnham Sterling Securities LLC, which later changed its named to Babcock & Brown Securities LLC in or around December 2019.  [*Id.* at ¶ 35].  B&B Securities is a registered broker-dealer specializing in the sale of unregistered private investment funds, and provides mergers and acquisitions advisory services.  [*Id.*].  Plaintiffs believe B&B Securities has used BABCOCK & BROWN marks in connection with the conduct of its business in the aircraft industry.  [*Id.* at ¶ 36].

In or around November 2014, Morgan formed B&B LLC.  [*Id.* at ¶ 38].  B&B LLC has several registered word marks, including: (1) "B & B" for "investment management" in Class 36[3], (2) "B & B" for "investment banking; financial consultation, financial analysis; capital investment and private equity fund management; and financial advisory services in the fields of asset-backed financing, project financings, leveraged leases, sale leasebacks, portfolios of leased or financed assets, secured debt, tax-advantaged financings, financial advisory services in the fields of financing equipment purchasing, financing equipment leasing, and financial equipment sales" in Class 36, (3) "BABCOCK & BROWN" for "investment management" in Class 36, and (4) "BABCOCK & BROWN" for "investment banking; financial consultation; financial analysis; capital investment and private equity fund management; and financial advisory services in the fields of asset-backed financings, project financings, leveraged leases, sale leasebacks, portfolios of leased or financed assets, secured debt, tax-

---

[3] Class 36 includes "[f]inancial, monetary and banking services; insurance services; real estate affairs."  37 C.F.R. § 6.1

advantaged financings; financial advisory services in the fields of financing equipment purchasing, financing equipment leasing, and financing equipment sales" in Class 36.

In or around December 2015, Morgan formed B&B Investment Management. [*Id.* at ¶ 42].

### C. Allegations of the Complaint

The amended complaint brings ten claims for relief: (1) trademark infringement under 15 U.S.C. § 1114(1) against all Defendants, (2) false designation of origin, affiliation, connection, or sponsorship under 15 U.S.C. § 1125(a)(1)(A) against all Defendants, (3) Connecticut common law trademark infringement against all Defendants, (4) false advertising under 15 U.S.C. § 1125(a)(1)(B) against all Defendants, (5) state and common law unfair competition against all Defendants, (6) cancellation of B&B LLC's "B&B" word mark, Reg. No. 5,851,855, (7) cancellation of B&B LLC's  "B&B" word mark, Reg. No. 6,037,338, (8) cancellation of B&B LLC's "BABCOCK & BROWN" word mark, Reg. No. 5,643,846, (9) cancellation of B&B LLC's "BABCOCK & BROWN" word mark, Reg. No. 5,769,928, and (10) refusal of Burnham Sterling's trademark application of the "BURNHAM BABCOCK & BROWN" word mark, Application No. 86/874,191.

### II.   LEGAL STANDARD

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a]

6

pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss for failure to state a claim, the court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint,

the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F.Supp.2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

### A.   Count 1: Trademark Infringement under 15 U.S.C. § 1114(1)

Count one of the amended complaint alleges trademark infringement under 15 U.S.C. § 1114(1) against all Defendants for the use of the BABCOCK & BROWN marks as it relates to Plaintiffs' registered BBAM marks.  Plaintiffs generally allege that they have a valid and incontestable ownership in the BBAM marks, the Defendants' use the BABCOCK & BROWN marks in commerce, and such use is confusingly similar to the BBAM marks so as to infringe on Plaintiffs rights.

Defendants argue count one should be dismissed because Plaintiffs have failed to plead facts plausibly showing infringement of the BBAM mark under 15 U.S.C. § 1114(1).

Under 15 U.S.C. § 1114(1):

(1) Any person who shall, without the consent of the registrant--(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints,

**packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.**

Trademark infringement claims are analyzed in two stages: *first* the court should inquire whether the mark "merits protection," and *second*, the court should inquire whether the allegedly infringement use of the mark is "likely to cause consumer confusion." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 224 (2d Cir.  2012).  Defendants concede Plaintiffs BBAM marks merit protection, thus the issue is whether Defendants' use of the BABCOCK & BROWN marks is likely to cause consumer confusion.

Courts have held that a "[p]laintiff need not 'prove confusion at the motion to dismiss stage'";  *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 55 (S.D.N.Y. 2015); because "likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss."  *Id.* (citing to *Van Prenagh v. Gratton*, 993 F. Supp. 2d 293, 3030 (E.D.N.Y. 2014)).  *See also The Coustea Society Inc. v. Cousteau*, 498 F. Supp. 3d 287, 309 (D. Conn. 2020).

The fact intensive analysis requires consideration of several variables, including:  "the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court

9

may have to take still other variables into account." *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

Given the array of considerations, analysis of which is highly fact intensive, Plaintiff's hurdle for pleading the likelihood of confusion is exceedingly low. *Scotch & Soda B.V. v. Scotch & Iron LLC*, No. 1:17-CV-04561 (ALC), 2018 WL 2224997, at *3 (S.D.N.Y. May 15, 2018). Due to the nature of the standard, "[a] motion to dismiss will be granted for failure to plead likelihood of confusion only if 'no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove.'" *Id.* Where Plaintiff "cannot possibly show confusion as to source or sponsorship" claims can be dismissed as a matter of law. *Roberts v. Bliss*, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017). "In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Id.*

Defendants argue that the registered BBAM marks differ dramatically from the BABCOCK & BROWN and B&B marks. Plaintiffs oppose, arguing that the likelihood of confusion should not be adjudicated at the motion to dismiss stage because it is a fact-intensive inquiry. In addition, Plaintiffs argue that the marks are similar given that BBAM is a known abbreviation of Babcock & Brown Aircraft Management.

The Court agrees with Plaintiffs and finds that at this stage of the proceeding, likelihood of confusion is sufficiently pled. As alleged in the amended complaint,

BBAM is a known abbreviation of Babcock & Brown Aircraft Management. Thus, the BBAM mark includes a connection to the BABCOCK & BROWN marks. It is not so implausible to find a likelihood of confusion based on these allegations, at least for the purposes of adjudicating a motion to dismiss.

Therefore, the Court denies Defendants' motion to dismiss the first count of the complaint.

B. Count 2: False Designation of Origin, Affiliation, Connection, and Sponsorship under § 1125(a)(1)(A).

Count 2 of the amended complaint alleges that Defendants have violated 15 U.S.C. § 1125(a)(1)(A) in that Plaintiffs have senior and continuous use of the BABCOCK & BROWN marks over Defendants use, that Defendants attempt to register BURNHAM BABCOCK & BROWN is confusingly similar to the BABCOCK & BROWN and BBAM marks.

Defendants argue that Plaintiffs have failed to assert a plausible Lanham Act claim because Plaintiffs have not adequately pled that they have a valid mark entitled to protection. [Mot., Dkt. 40 at 12–13]. Defendants contend the uses of the BABCOCK & BROWN mark in Plaintiffs' amended complaint are not sufficient to constitute a use in commerce and therefore Plaintiffs have no right to exclusive use of the marks. [*Id.* at 13]. Specifically, Defendants allege that Plaintiffs' use through Nomura Babcock & Brown and Fly does not establish a valid mark entitled to protection. Plaintiffs oppose, arguing that Defendants wrongfully limit Plaintiffs' use, as alleged in the complaint, to the use through Nomura Babcock & Brown and Fly, because the complaint alleges direct use as well. Plaintiffs further argue that if the affiliate connections were the only basis, they do sufficiently establish a valid

mark.  In response, Defendants argue that Plaintiffs' claims of direct commercial use are conclusory statements not entitled to an assumption of truth.

As stated above, the first stage of inquiry into a trademark infringement claim requires consideration of whether the mark "merits protection." *Christian Louboutin S.A.*, 696 F.3d at 224.  "The right to exclusive use of a trademark derives from the use in commerce of the mark, rather than from the mark's mere adoption." 15 U.S.C. § 1125; *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90  (1918). The Lanham Act defines "use in commerce" as the "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.  "The talismanic test is whether or not the mark was used in a way sufficiently public to identify or distinguish the marked goods [or services] in an appropriate segment of the public mind as those of the adopter of the mark." *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007).

Here, the issue is whether Plaintiffs were required to plead more factual allegations to establish their use of the BABCOCK & BROWN marks in commerce aside from that which has been alleged in the complaint.  This case is similar to that in *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399 (D. Conn. 2018), where the plaintiff alleged in its complaint that it "began offering" products under the tradename at issue before the defendants alleged use.  *Id.* at 416.  The court found this allegation sufficiently alleged use of the mark in commerce over the defendant's objection, where it argued more facts needed to be alleged.  *Id.* at 416–17. The court stated that the additional information the

12

defendant sought—such as the date it adopted the mark, the date of its first sale using that mark, and records of its sale to customers—"extends beyond the requires of a well-pleaded complaint."  *Id.* at 417.

Similar to the holding in *Anthem Sports* and the case law discussed above in Part III.A, Plaintiffs have sufficiently alleged use in commerce of the BABCOCK & BROWN marks.  This is true even if the use of the marks does not include the affiliate and joint venture uses because Plaintiffs allege that "it has continuously conducted business under the Babcock & Brown name directly, . . . ."  [Am. Compl. at ¶ 18].  The allegations of use in commerce are sufficient to put the Defendants on notice of the bases upon which Plaintiff intends to prove "in use" ownership. This is not a "conclusory allegation" as Defendants allege, nor does it implausibly support Plaintiffs' claims.  Defendants have been put on notice that Plaintiffs intend to satisfy their burden of establishing "use in commerce" by showing direct use by Plaintiffs.  Defendants desire for more factual allegations seeks to set a precent that would unreasonably and untenably require plaintiffs to allege specific uses of a challenged mark to sufficiently allege "use in commerce."  That reaches beyond what Rule 8, *Twombly* and *Iqbal* require.

To the extent Defendants are arguing that these allegations are insufficient to raise a Lanham Act claim because some heightened pleading standard should apply, Defendants have provided no legal basis for such a conclusion.  To the contrary, while some authorities "differ as to whether [the Rule 9] heightened pleading standard applies to Lanham Act claims . . . [t]he issue has not been addressed by the Second Circuit, nor does it appear that any other federal appellate

court has reviewed the question of the applicability of Rule 9(b) to a Lanham Act claim." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 265 (E.D.N.Y. 2014) (internal citations omitted).   Courts in this circuit that have addressed this issue have declined to impose a heightened pleading standard. *Id.*; *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 229 n.9 (E.D.N.Y. 2020) (analyzing "the sufficiency of the complaint under the pleading standard of Rule 8(a) rather than Rule 9(b)). This conclusion is supported by the reasoned decision of the Third Circuit in *UHS of Del., Inc. v. United Health Servs.*, 2013 U.S. Dist. LEXIS 43921.

Therefore, the Court denies Defendants' motion to dismiss count two of the amended complaint.

### C. Count 3: Connecticut Common Law Trademark Infringement

Count three of the amended complaint alleges Connecticut common law trademark infringement under the same general allegations as counts one and two. "The test for trademark infringement … under Connecticut law is identical to the test under the Lanham Act." *Verilux, Inc. v. Hahn*, No. 3:05CV254(PCD), 2007 WL 2318819, at *10 (D. Conn. 2007).   Defendants argue that the Connecticut common law trademark infringement claim should be dismissed for the same reasons raised in Defendants' efforts to dismiss count two.   However, the Court has not dismissed the federal trademark infringement claim and thus Defendants' only argument fails.

Therefore, the Court denies Defendants' motion to dismiss count three of the amended complaint.

### D. Count 4: False Advertising under 15 U.S.C. § 1125(a)(1)(B)

14

Count four of the amended complaint alleges false advertising in violation of 15 U.S.C. § 1125(a)(1)(B) against all Defendants.  Plaintiff alleges that the use of the name "Babcock & Brown" falsely and/or misleadingly represents that there is a continuation, sponsorship, or affiliation between Defendants and their goods and services on the one hand and Babcock & Brown LP and BBAM on the other hand, where no such relationship exists.  Plaintiffs further allege that Defendants' conduct has caused or is likely to cause Plaintiffs to lose business opportunities and damage Plaintiffs' reputation in the aircraft management and leasing industry.

"A claim of false advertising may be based on at least one of two theories: 'that the challenged advertisement is literally false, *i.e.*, false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'"  *Tiffany (NJ) Inc.*, 600 F.3d at 112 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)).  Additionally, a plaintiff must prove that the challenged advertisement is "the cause of actual or likely injury to the plaintiff."  *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255–56 (2d Cir. 2014)).  "[W]here the statement at issue is not literally false, however, a plaintiff 'must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers,' and must 'demonstrate that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement.'"  *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F. 3d 93 ,112–13.

15

Defendant argues that count four should be dismissed because Plaintiffs' only allegation of false advertising relates to a statement that is true and Plaintiffs have not sufficiently alleged that a statistically significant part of the commercial audience holds the false belief allegedly communicated.  Defendants claim the only challenged advertisement is from Burnham Sterling's website, which states: "[t]he traditional aircraft advisory activities formerly offered by Babcock are not offered by Burnham Sterling."  [Am. Compl. at ¶ 19].  Defendant argues that the contested statement is true based on Plaintiffs' own complaint, which identifies Burnham Sterling as "an aircraft advisory company that offers a range of service, including aircraft leasing, financial analysis, and leasing portfolio management services." [Am. Compl. at ¶ 19].

Plaintiffs oppose, arguing that Defendants have mischaracterize the amended complaint as only alleging false advertising with respect to that single website excerpt, and Defendants disregard the allegations related to their false and misleading use of the Babcock & Brown name.

The Court agrees with Plaintiff that Defendants have improperly limited the false advertising claim, which was raised against all Defendants, to the one statement found on Burnham Sterling's website.  Rather, Plaintiffs' complaint raises a false advertising claim relating to all Defendants use of Babcock & Brown in commerce, not just the one statement on Burnham Sterling's website. Regardless, even the one statement on the website is enough to establish a false advertising claim because Plaintiff is alleging that using the terms "formerly offered by" is false and/or misleading because no such relationship exists.

16

Therefore, the Court denies Defendants' motion to dismiss count four of the amended complaint.

### E.  Count Five: State and Common Law Unfair Competition

Count five of the amended complaint raises state and common law unfair competition against all Defendants. Specifically, Plaintiffs allege that Defendants use of BABCOCK & BROWN marks is deceptive because it is likely to mislead consumers to believing an association between Plaintiffs and Defendants. Plaintiffs claim this use will cause a loss of business opportunities and damage to Plaintiffs' reputation.  Plaintiffs allege that Defendants' conduct is unfair because it offends the public policy established under the federal, state, and common law trademark infringement law discussed above.

Defendants' argument for why the state and common law unfair competition claim should be dismissed is dependent on the Court dismissing the federal, state, and common law trademark infringement claims. Because the Court does not dismiss those claims, and because Defendants have not raised another basis for dismissing this count, the Court denies Defendants' motion to dismiss count five of the amended complaint.

### F.  <u>Counts 6 through 10: Cancellation of the BABCOCK & BROWN and B&B Marks and Refusal of the Pending BURNHAM BABCOCK & BROWN Application</u>

Count six through ten seek to cancel Defendants various trademarks and to refuse the pending application to trademark BURNHAM BABCOCK & BROWN. Defendants' argument for why cancellation/refusal claims should be dismissed is dependent on the Court finding a lack of sufficient evidence to establish likelihood

of confusion.    Because the Court found that Plaintiffs' complaint sufficiently alleged likelihood of confusion, and because Defendants have not raised another basis for dismissing this count, the Court denies Defendants' motion to dismiss counts six through ten of the amended complaint.

IV.    CONCLUSION

For the reasons stated above, Defendants motion to dismiss is DENIED.


IT IS SO ORDERED.

Vanessa Bryant  Digitally signed by Vanessa Bryant
Date: 2021.09.29 15:21:54 -04'00'

**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated this day in Hartford, Connecticut: September 29, 2021**