|  |  |
|---|---|
| BBAM Aircraft Management LP and BBAM US LP, | Case No. 3:20-cv-01056-OAW |
| Plaintiffs and Counterclaim-Defendants, | |
| -against- | |
| Babcock & Brown LLC, Burnham Sterling & Company LLC, Babcock & Brown Securities LLC, Babcock & Brown Investment Management LLC, | |
| Defendants and Counterclaim-Plaintiffs. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR (1) OPPOSITION TO DEFENDANTS' MOTION FOR ADDITIONAL DISCOVERY AND (2) CROSS-MOTION FOR A PROTECTIVE ORDER**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

I.      BBAM'S MTD PROVIDES MULTIPLE INDEPENDENT GROUNDS FOR DISMISSING THE LEGALLY DEFICIENT COUNTERCLAIMS ................................ 7

II.     DEFENDANTS SEEK TO OPEN DISCOVERY INTO WIDE-RANGING ISSUES ...................................................................................................................... 11

III.    DEFENDANTS WILL NOT BE PREJUDICED BY A BRIEF STAY ......................... 13

IV.    DEFENDANTS DO NOT HAVE GOOD CAUSE TO SEEK ADDITIONAL DISCOVERY .......................................................................................................... 14

V.     BBAM'S CROSS-MOTION FOR A PROTECTIVE ORDER UNDER RULE 26(c) SHOULD BE GRANTED FOR ALL THE SAME REASONS ........................... 15

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowen v. Ziasun Techs., Inc.*,
  116 Cal. App. 4th 777 (2004) ...................................................................................8

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
  465 F. Supp. 3d 416 (S.D.N.Y. 2020) ......................................................................9

*Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*,
  No. 08 Civ. 2437 (RJS), 2008 WL 11510668 (S.D.N.Y. June 12, 2008) ................6

*Ema Fin., LLC v. Vystar Corp.*,
  336 F.R.D. 75, 79 (S.D.N.Y. 2020) ................................................................. *passim*

*EnSource Invs. LLC v. Willis*,
  No. 3:17-cv-00079-H-LL, 2019 WL 6700403 (S.D. Cal. Dec. 6, 2019)..................8

*Facebook, Inc. v. Brandtotal Ltd.*,
  No. 20-cv-07182-JCS, 2021 WL 2354751 (N.D. Cal. June 9, 2021) ......................10

*GEOMC Co. v. Calmare Therapeutics Inc.*,
  918 F.3d 92 (2d Cir. 2019)......................................................................................10

*Gross v. Symantec Corp.*,
  No. C 12–00154 CRB, 2012 WL 3116158 (N.D. Cal. July 31, 2012) ....................9

*Hertz Glob. Holdings, Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh*,
  No. 19-cv-6957 (AJN), 2020 WL 6642188 (S.D.N.Y. Nov. 12, 2020)..................14

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
  297 F.R.D. 69 (S.D.N.Y. 2013) ..........................................................................7, 15

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
  No. 09-CV-5874 (RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009)........11, 13, 15

*ITT Corp. v. Travelers Cas. & Sur. Co.*,
  No. 3:12-CV-38(RNC), 2012 WL 2944357 (D. Conn. July 18, 2012) ....................6

*Kwikset Corp. v. Superior Court*,
  246 P.3d 877 (Cal. 2011) .........................................................................................9

*Lithgow v. Edelmann*,
  247 F.R.D. 61 (D. Conn. 2007)................................................................................6

*Miller v. Brightstar Asia, Ltd.*,
No. 20-CV-4849 (GBD) (JLC), 2020 WL 7483945 (S.D.N.Y. Dec. 21, 2020)...............14, 15

*N. Am. Energy Sys., LLC v. New England Energy Mgmt., Inc.*,
269 F. Supp. 2d 12 (D. Conn. 2002) ....................................................................10

*Niv v. Hilton Hotels Corp.*,
No. 06 Civ. 7839 (PKL), 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007)...................................6

*Rivera v. Heyman*,
No. 96-CV-4489(PKL), 1997 WL 86394 (S.D.N.Y. Feb. 27, 1997) .....................................13

*Siegal v. Gamble*,
No. 13-cv-03570-RS, 2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) .......................................9

*Spinelli v. Nat'l Football League*,
No. 13 CV 7398 (RWS), 2015 WL 7302266 (S.D.N.Y. Nov. 17, 2015) .............................13

*Sullivan v. Oracle Corp.*,
254 P.3d 237 (Cal. 2011) ...................................................................................8

**Statutes**

10 L.P.R.A. § 861 ..................................................................................................4

15 U.S.C. § 78o ....................................................................................................4

15 U.S.C. § 78o(a) ...............................................................................................12

Cal. Corp. Code § 25210 .......................................................................................4

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................................ *passim*

N.Y. Gen. Bus. Law § 359-e ..................................................................................4

Texas Rev. Civ. Stat. Art. 581-7 .............................................................................4

U.S. Securities Exchange Act § 15(a).................................................................4, 12

Utah Code Ann. § 61-1-3 .......................................................................................4

**Other Authorities**

Fed. R. Civ. P. 16(b)(4)........................................................................................14

Fed. R. Civ. P. 26 .................................................................................................6

Fed. R. Civ. P. 26(c) ..................................................................................... *passim*

Fed. R. Civ. P. 26(d) ................................................................................................6

Fed. R. Civ. P. 30(a)(2)(A) .......................................................................................1

Fed. R. Civ. P. 30(b)(6) ............................................................................................5

U.S. Constitution Article III ......................................................................................9

# INTRODUCTION

Plaintiffs and Counterclaim-Defendants BBAM Aircraft Management LP and BBAM US LP (collectively "BBAM") oppose Defendants' Babcock & Brown LLC, Burnham Sterling & Co. LLC, Babcock & Brown Investment Management LLC, and Babcock & Brown Securities LLC's (collectively, "Defendants") Motion for Leave from Case Suspension and Under Rule 30(a)(2)(A) to Conduct Additional Discovery Related to their Amended Counterclaims ("Motion for Additional Discovery"), Dkt. 130. In this Motion, Defendants seek additional discovery relating to the unfair competition counterclaim ("UCL claim") in their First Amended Answer and Counterclaims, which BBAM has moved to dismiss.

As detailed in BBAM's pending Motion to Dismiss Defendants' First Amended Answer and Counterclaims ("MTD") and summarized below, all of Defendants' amended counterclaims are fatally flawed and should be dismissed with prejudice. *See* Dkt. 142. Defendants' UCL claim seeks to inject a host of new issues into the case which would, in turn, require far-reaching discovery. If permitted, both BBAM and Defendants would need to take more depositions, serve and respond to written discovery on several different topics, produce documents on these disparate topics, and provide new damages reports that addresses Defendants' new theory of competition. If the Court dismisses the UCL claim, it will moot the need for this discovery and allow the trademark claims to promptly proceed to summary judgment and trial. Because BBAM anticipates that the Court's ruling on its MTD will obviate the need for *any* discovery related to the amended counterclaims, BBAM hereby opposes Defendants' motion and files concurrently with this opposition a cross-motion for a protective order under Rule 26(c) to stay discovery on the amended counterclaims until after the Court has ruled on BBAM's MTD. Rule 26(c) is designed to shield parties from precisely the type of expensive and potentially

wasteful discovery that Defendants seek here, especially at this stage of the case with discovery closed except two pending motions. BBAM thus respectfully requests that the Court grant its Motion for a Protective Order and deny Defendants' Motion for Additional Discovery.

**BACKGROUND**

In July of 2020, BBAM filed suit against Defendants based on their improper and infringing use of BBAM's trademarks. BBAM is an aircraft leasing and asset management company that was founded more than 30 years ago, incorporated as an entity in 1992, and was previously owned by Babcock & Brown LP, an international investment advisory firm. In 2010, Babcock & Brown LP went out of business, but BBAM (short for Babcock & Brown Aircraft Management) did not—it was purchased by its management team and continued operations. BBAM has continually conducted business for the last three decades. Today, it is the third largest manager of leased commercial jet aircraft in the world and the largest dedicated manager of third-party capital in the sector, with more than $28.9 billion of aircraft assets under management. BBAM owns incontestable federal registrations for the BBAM mark (Reg. No. 2,424,139) and BBAM logo (Reg. No. 3, 925,643). In addition, BBAM is widely recognized in the industry by the BABCOCK & BROWN mark and the abbreviated B&B mark among its airline clients and its target investor market. It has continually used the marks for more than 30 years.

Defendants consist of four companies owned and managed by Michael Dickey Morgan, a former BBAM employee. After parting ways with BBAM in or around 2010, Mr. Morgan started Burnham Sterling, which offers financial advisory and investment management services to airlines. In marketing materials, Burnham Sterling makes express, literally false claims of affiliation or continuation with Babcock & Brown and/or BBAM, often referring to the two

entities interchangeably. Burnham Sterling and the other Defendant entities intentionally and willfully use BBAM's BABCOCK & BROWN and B&B word marks to associate themselves with, and trade off of, BBAM's long-standing reputation and goodwill in the industry. Defendants' false and infringing uses of the BABCOCK & BROWN marks are likely to lead to consumer confusion and cause mistake in the airline and aircraft financing industries, harm BBAM's reputation, create a significant risk of confusion, and divert business opportunities that would otherwise have gone to BBAM.

In its First Amended Complaint[1] ("FAC"), BBAM specifically asserted claims under federal and state law for (1) trademark infringement, (2) false advertising, (3) unfair competition under Connecticut law, and (4) cancellation of Defendants' infringing trademark registrations and refusal of a pending trademark application. See Dkt. 32 (FAC) at 27-40. Defendants moved to dismiss the FAC on October 16, 2020, and the motion was denied on September 29, 2021. Dkt. 39, Dkt. 89.

On October 13, 2021, Defendants filed their Answer to the FAC and included five counterclaims for declaratory relief. Dkt. 95. As these counterclaims were improper "mirror-images" of BBAM's affirmative claims, BBAM promptly moved to dismiss. See Dkt. 110-1. While BBAM's motion was pending, Defendants filed the First Amended Answer and Counterclaims ("FAAC") on November 11, 2021. Dkt. 118. In addition to repleading the mirror-image counterclaims with no relevant substantive change, the FAAC seeks to add a sixth counterclaim against BBAM alleging violations of California's Unfair Competition Law, Cal.

---

[1] On September 2, 2021, BBAM sought leave to file a Second Amended and First Supplemental Complaint ("SAC"). Dkt. 84. The SAC does not add new claims but conforms the allegations and theories of the existing claims to facts learned from the Defendants in discovery. Dkt. 84-1, Ex. B ¶¶ 107; 112; 117; and 122.

Bus. & Prof. Code § 17200, *et seq.* ("UCL"), based on alleged violations of the law of at least seven jurisdictions, including (1) California Corp. Code § 25210; (2) 10 L.P.R.A. § 861 (Puerto Rico); (3) Texas Rev. Civ. Stat. Art. 581-7; (4) N.Y. Gen. Bus. Law § 359-e; (5) Utah Code Ann. § 61-1-3; (6) 15 U.S.C. § 78o; and (7) the Japanese Financial Instruments and Exchange Act. Dkt. 118 (FAAC[2]) ¶¶ 15, 157.  As California's UCL "borrows" violations of other laws, Defendants' UCL claim would require resolving both the applicability of California's UCL to this suit, and which (if any) of the laws of these other jurisdictions was violated.

The UCL counterclaim—which is meritless—attempts to weave together a complicated set of facts involving BBAM's 30-year partnership with a Japanese company, Nomura Babcock & Brown.  FAAC ¶¶ 110–112, 157.  Defendants allege that Nomura Babcock & Brown sells investment interests in "Japanese Leases" to investors in Japan.  *Id*. ¶ 96.  Defendants further allege that the Nomura Babcock & Brown investment interests qualify as "securities" under various jurisdictions' laws, and that BBAM assists Nomura Babcock & Brown in that process. *Id.* ¶¶ 95; 105(a).  Finally, Defendants allege that BBAM violated securities law by failing to obtain certain licenses required for those who sell securities; *id*. ¶¶109–112; and that neither BBAM nor its affiliates have obtained any license to conduct securities business in Japan.  *Id.* ¶ 58.  Neither the UCL claim itself, nor the underlying securities laws on which it is based, have any relation to the claims and defenses that have been pending in this lawsuit since July 2020.

On December 13, 2021, BBAM moved to dismiss the FAAC.  *See* MTD, Dkt. 142.  In its MTD, BBAM presented several independent grounds that compel dismissal of the UCL claim, including arguments related to standing, extraterritoriality, the UCL's inapplicability to securities

---

[2] The FAAC contains two sets of numbered paragraphs: the Amended Answer runs from ¶¶ 1–132 and the Amended Counterclaims runs from ¶¶ 1–162.  All of BBAM's citations to the FAAC are to the First Amended Counterclaims.

laws, Defendants' inability to articulate an actionable unfair competition claim, and late-filed permissive counterclaims. *Id.* Any one of these five arguments provides a basis for complete dismissal of the UCL claim. BBAM also moved to dismiss the redundant declaratory relief counterclaims for lack of justiciability. *Id.* at 37–39.

At the time that the FAAC was filed, the parties had virtually completed discovery by the Court's cutoff date of October 15, 2021. Dkt. 80. The only outstanding discovery was a further deposition of Defendants' 30(b)(6) witness and two disputed discovery issues addressed in pending motions to compel. Dkts. 93, 100. To provide time to resolve the discovery motions, the Court suspended the scheduling order on October 27, 2021. Dkt. 104.

As Defendants themselves concede, discovery to date has focused solely on BBAM's trademark and false advertising claims. Dkt. 130-1 at 7. BBAM has taken no discovery on the UCL claim because BBAM was not aware of this claim until the FAAC was filed—after the Court-set discovery cut-off of October 15, 2021. Dkt. 80.

On November 30, 2021, Defendants moved for leave from the case suspension to take additional discovery related to their UCL counterclaim. Dkt. 130. Defendants do not seek discovery related to their declaratory relief counterclaims, which are mirror-images of Plaintiffs' affirmative claims. [3] Dkts. 130; 142. BBAM files this opposition brief and cross-motion for a protective order in response.

## **LEGAL STANDARD**

Pursuant to Rule 26(c), a district court may stay discovery upon a showing of good cause. *See* Fed. R. Civ. P. 26(c); *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 79 (S.D.N.Y. 2020)

---

[3] If Defendants do seek to argue that discovery is necessary for the declaratory relief claims, the request 1) would be too late and 2) would seek duplicative discovery on the trademark and false advertising claims.

("[U]pon a showing of good cause a district court has considerable discretion to stay discovery pursuant to Fed. R. Civ. P. 26(c).") (citation and internal quotation omitted).  "[Rule] 26(d) also allows the Court to control the sequence and timing of discovery, particularly where resolution of a preliminary matter may decide the entire case." *Ema Fin.,* 336 F.R.D. at 79; *see also* Fed. R. Civ. P. 26(d).

To determine whether good cause exists due to a pending dispositive motion like BBAM's MTD, courts consider three factors: (1) the strength of the pending dispositive motion; (2) the breadth of discovery sought; and (3) any prejudice that would result to the non-moving party. *Ema Fin*., 336 F.R.D. at 79; *Lithgow v. Edelmann*, 247 F.R.D. 61, 62 (D. Conn. 2007) (explaining and applying test).  "Good cause may be shown where a party has filed, or has sought leave to file, a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the order." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Niv v. Hilton Hotels Corp*., No. 06 Civ. 7839 (PKL), 2007 WL 510113, at *1 (S.D.N.Y. Feb. 15, 2007)).

## ARGUMENT

All three factors strongly favor staying discovery until the Court has ruled on BBAM's pending MTD: (1) the pending MTD is likely dispositive and strong; (2) Defendants seek wide-ranging discovery and significant further discovery will be required on the substance of the FAAC's counterclaims; and (3) Defendants will not be prejudiced by a brief delay.  "Rule 26 is often invoked to avoid potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." *ITT Corp. v. Travelers Cas. & Sur. Co*., No. 3:12CV38(RNC), 2012 WL 2944357, at *2 (D. Conn. July 18, 2012) (internal

citation and quotation omitted) (granting protective order to stay discovery until court rules on pending motion to dismiss).  As explained below, the expansive scope of the UCL claim will almost certainly necessitate wide-ranging discovery, including multiple depositions, new sets of written discovery, additional expert discovery, and additional damages reports.  But if the Court dismisses the amended counterclaims, it will preclude the need for *any* discovery on the FAAC. The discovery that Defendants seek is thus exactly the type of "potentially expensive and wasteful discovery" that Rule 26(c) was designed to forestall.

I.  **BBAM'S MTD PROVIDES MULTIPLE INDEPENDENT GROUNDS FOR DISMISSING THE LEGALLY DEFICIENT COUNTERCLAIMS**

Defendants included six counterclaims in their FAAC: the first five counterclaims sought declaratory relief, and the sixth counterclaim alleged a complicated theory of unfair competition based on an alleged violation of the securities laws of seven jurisdictions.  FAAC ¶¶110-112, 135, 141, 146, 150, 155, 157.  As BBAM explained in its MTD, all six of Defendants' counterclaims are legally deficient.  The declaratory relief counterclaims lack justiciability because they are improper mirror images of BBAM's affirmative claims, and the UCL claim is not only untimely and should be litigated in California, if anywhere, but meritless because (among other reasons) California's UCL does not apply to securities violations, nor does it apply extraterritorially.   Dkt. 142 at 20, 24, and 37.

For the first factor, courts find that a stay of discovery is appropriate where the pending motion to dismiss has presented "substantial arguments" for dismissal.  *EMA Fin*., 336 F.R.D. at 79; *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd*., 297 F.R.D. 69, 72 (S.D.N.Y. 2013).  BBAM's MTD presented at least six independent arguments that compel

dismissing the amended counterclaims.[4]

***California's UCL Does Not Apply To Alleged Securities Violations***:  Defendants' UCL claim alleges that BBAM violated securities laws because its partner Nomura Babcock & Brown allegedly sold securities in Japan.  The UCL claim must be dismissed as a matter of law because California follows the majority view that such state laws do not apply to violations of securities laws and regulations based on securities transactions.  *See Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 790 (2004) ("[S]ection 17200 does not apply to securities transactions and the court did not err in dismissing plaintiffs' first three causes of action on that basis."); MTD at 20. "No court . . . has allowed Section 17200 claims to proceed where, as here, the predicate acts are securities transactions."  *EnSource Invs. LLC v. Willis*, No. 3:17-cv-00079-H-LL, 2019 WL 6700403, at *16 (S.D. Cal. Dec. 6, 2019).  This is not just a substantial argument for dismissal. It is blackletter law in California that the UCL does not apply to securities transactions as alleged in the FAAC.  Defendants' UCL counterclaim is accordingly meritless.

***The UCL Does Not Apply Extraterritorially***:  Defendants' UCL claim must also be dismissed because they seek to stretch the UCL to cover conduct that occurred outside of California, but it is clear under California law that the UCL does not reach extraterritorially, including to transactions that allegedly occurred in Japan.  MTD at 24; *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force.").  In order for the UCL to apply, the alleged transaction must have occurred in California.  *See, e.g.,*

---

[4] To avoid redundant pleading, BBAM will summarize and provide a high-level overview of its MTD arguments in this brief.  BBAM respectfully directs the Court to its pending MTD for detailed analysis and explanation of its arguments for dismissal.  *See* Dkt. 142.

*Siegal v. Gamble,* No. 13-cv-03570-RS, 2016 WL 1085787, at *7 (N.D. Cal. Mar. 21, 2016)

(requiring that a security sale "took place in California" to fall under California law); *Gross v.*

*Symantec Corp.*, No. C 12–00154 CRB, 2012 WL 3116158, at *7–8 (N.D. Cal. July 31, 2012)

(dismissing a UCL claim for failing to allege that wrongful conduct occurred in California).  As

BBAM explained in its MTD, all of the transactions alleged in the FAAC occurred in Japan

between third-party Nomura Babcock & Brown and Japanese investors—there is not a single

allegation that an allegedly regulated transaction occurred in California.  MTD at 25–26.  Again,

Defendants' UCL claim is meritless and should be dismissed under blackletter California law.

**Defendants Do Not Allege Standing Under the UCL**:  Defendants' UCL claim must also

be dismissed because Defendants do not meet the UCL's standing requirement.  MTD at 26.

Specifically, the UCL requires standing beyond what is required by Article III standing,

requiring both an *economic* injury in fact, and a causal link between the alleged misconduct and

the claimed economic injury.  *See* MTD at 27; *see also Kwikset Corp. v. Superior Court*, 246

P.3d 877, 887–888 (Cal. 2011); *City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F.

Supp. 3d 416, 449 (S.D.N.Y. 2020) (finding Article III standing but dismissing a UCL claim

because Plaintiff nevertheless failed to allege *economic* injury as required by the UCL).  For the

reasons that BBAM explained in its MTD, Defendants' allegations of economic injury do not

meet the UCL standing requirements, again compelling dismissal.  MTD at 28–30.

**Defendants Cannot Allege A Substantive Violation of the UCL**:  Defendants' UCL

claim must also be dismissed because Defendants cannot state a claim for a substantive violation

of the UCL.  MTD at 30.  The UCL has three theories of liability called "prongs"—unfair

competition can be (1) unlawful, (2) unfair, or (3) fraudulent.  Defendants allege claims under

the unlawful and unfair prongs, but not the fraudulent prong.  *Id.* at 19.  BBAM's MTD shows

that violations of foreign law cannot constitute "unlawful" or "unfair" UCL predicate violations, which eliminates Defendants' claims based on violations of non-California state or international law.  MTD at 30.  Further, BBAM could not have violated either California or federal securities laws because the relevant statutes *do not apply* to transactions that Defendants allege occurred in Japan.  MTD at 31.  As a matter of law, Defendants also cannot state a claim under the unfair prong of the UCL, which is the equivalent of a federal antitrust claim, because they make no attempt to (and cannot allege) such a claim.  MTD at 35-36; *see also Facebook, Inc. v. Brandtotal Ltd.*, No. 20-cv-07182-JCS, 2021 WL 2354751, at *14–16 (N.D. Cal. June 9, 2021) (explaining that an unfair UCL claim must implicate antitrust law and describing the necessary elements under antitrust law); *N. Am. Energy Sys., LLC v. New England Energy Mgmt., Inc.*, 269 F. Supp. 2d 12, 16 (D. Conn. 2002) (setting forth the same pleading requirements as *Facebook*). Even if Defendants could plead around the fact that the UCL does not apply to securities law and their lack of standing (they cannot), they fail to (and cannot plead) a violation of any liability prong of the UCL.

***The UCL Claim Unduly Expands the Scope of the Case***:  Setting aside the fact that Defendants' UCL counterclaim is meritless as a matter of law, Defendants' UCL counterclaim should also be dismissed because it is brought late in the case and will unduly expand the litigation to BBAM's prejudice.  MTD at 10.  A new counterclaim that raises issues beyond the scope of the plaintiff's original claims is generally not permitted at a late stage of the case given "undue expansion of litigation that the court is charged with managing" and "escalating prejudice" to the counter-defendant.  *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100 (2d Cir. 2019) ("[a]t a late stage of the litigation . . . a new counterclaim should normally not be permitted if it exceeds the scope of the plaintiff's new claims.").  The UCL claim unduly

expands the litigation: it is a complicated legal theory based on California law that invokes the laws and regulatory requirements of at least *seven* jurisdictions. MTD at 8, 15. The UCL counterclaim is brought too late to proceed because it was first brought 18 months into the case and after the Court-set discovery cutoff. Further, it is a permissive counterclaim that should be dismissed in the Court's discretion due to concerns about prejudice and delay. MTD at 12-14.

The Court could decide to dismiss the UCL claim based on *any one of BBAM's five arguments*—they are all independent grounds for dismissal. *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.,* No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (granting stay and noting that "Honeywell has put forth in its motion multiple, independent arguments for dismissal…"). This factor thus decisively favors a stay.

## II.     DEFENDANTS SEEK TO OPEN DISCOVERY INTO WIDE-RANGING ISSUES

The second factor is the breadth of discovery sought and the concomitant burden of responding to it. *Ema Fin*., 336 F.R.D. at 79; *Integrated Sys. & Power*, 2009 WL 2777076, at *1. Defendants' UCL claim dramatically expands the scope of this case at a time when discovery is virtually complete, including expert disclosures and depositions, and when the parties should be preparing for dispositive motion practice. All of BBAM's claims spring from the same narrow core of facts and allegations pertaining to Defendants' use of trademarks and related misconduct. Defendants' new UCL claim, on the other hand, has nothing whatsoever to do with trademark infringement or even intellectual property rights. Instead, Defendants vaguely allege a complicated legal theory based on California law that BBAM unfairly competes with Defendants based on regulatory requirements in at least *seven* relevant jurisdictions. *See* FAAC ¶¶110–112, 157. While Defendants characterize the discovery as "limited" and "very narrow," Dkt. 130-1 at 5, the Court should view such claims with a skeptical eye—Defendants' claim will

essentially require a full-blown second litigation that is entirely discrete from the narrow core of facts, claims, and defenses currently at issue in the case. Indeed, in their motion, Defendants want a blank check on written discovery, seeking "written discovery requests starting immediately" with no limitation. Dkt. 130 at 2.

Moreover, Defendants cannot plausibly claim that only "limited" discovery is needed when BBAM has not taken *any* discovery on this claim. Defendants allege that they learned the basis for their UCL claim from discovery and from depositions that were taken beginning in August. Dkt. 130-1 at 2. But Defendants did not disclose the UCL claim to BBAM until they filed the FAAC on November 11, 2021, *after* the Court-set discovery cutoff of October 15, 2021. Dkt. 80, Dkt. 118. BBAM had no warning of the UCL claim and was thus unable to take any discovery on it, even though BBAM had served an interrogatory on August 16, 2021, that explicitly sought information regarding the factual bases for any potential counterclaims. MTD at 4–5. BBAM would need to re-depose many of Defendants' employees to develop evidence for use in its defense. To understand and defend against Defendants' claims of unfair competition, BBAM would—at a minimum[5]—need to serve discovery and depose Defendants regarding the following topics: (1) Defendants' compliance with federal securities regulations, specifically Section 15(a) of the U.S. Securities Exchange Act (the "Exchange Act"), codified at 15 U.S.C. § 78o(a), and similar regulations in the states and countries where they operate, FAAC ¶¶ 15, 157; (2) Defendants' efforts to enter the Japanese market and associated costs; (3) Defendants' participation and related marketing expenditures in that market; (4) to whom Defendants marketed to and what responses Defendants received from their marketing efforts;

_____

[5] If the UCL claim is allowed, BBAM will need to serve a responsive pleading and reserves all rights to assert any and all appropriate claims and defenses therein. Thus, these are just exemplary categories.

(5) the investigation that Defendants conducted before filing the FAAC; (6) complicated issues of causation arising from Defendants' claims that BBAM's alleged lack of a broker-dealer license caused them harm in a foreign market; and (7) new claimed damages arising from Defendants' contention that they lost business due to BBAM's conduct. Moreover, BBAM and Defendants would need to prepare entirely new expert reports including on securities regulations and damages that account for Defendants' new UCL allegations.

*None* of these issues were within the scope of BBAM's First Amended Complaint or Defendants' defenses; no discovery has been taken by BBAM on *any* of these issues. The amended counterclaims are far afield from the straightforward trademark infringement and false advertising case that the parties have been litigating since July 2020 and broad discovery will be necessary if the claim proceeds. This factor thus strongly supports a stay.

## III.  DEFENDANTS WILL NOT BE PREJUDICED BY A BRIEF STAY

Finally, Defendants do not (nor can they) articulate any prejudice that would arise from a brief stay. "A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Spinelli v. Nat'l Football League*, No. 13 CV 7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) (quoting *Rivera v. Heyman*, No. 96 CV 4489(PKL), 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997)). As explained above, BBAM's MTD is a dispositive motion that may entirely eliminate the amended counterclaims, which would then eliminate any need for the related discovery—saving *both* sides substantial amounts of time and money.

Moreover, BBAM seeks to stay discovery only until the Court has ruled on its pending motion to dismiss. Courts routinely find that stays of only a few months do not prejudice the other party. *See, e.g.*, *Integrated Sys. & Power*, 2009 WL 2777076, at *1 (finding no prejudice

and granting stay where "the stay requested by Defendant will likely delay the commencement of discovery for only a few months"); *Hertz Glob. Holdings, Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh*, No. 19-cv-6957 (AJN), 2020 WL 6642188, at *1 (S.D.N.Y. Nov. 12, 2020) (finding no prejudice in "a short delay at this time"); *Miller v. Brightstar Asia, Ltd*., No. 20-CV-4849 (GBD) (JLC), 2020 WL 7483945, at *5 (S.D.N.Y. Dec. 21, 2020) (finding no prejudice where the stay of discovery would "presumably be for a relatively short time"). According to the current briefing schedule, BBAM's MTD will be fully briefed and ready for adjudication by January 17, 2022.[6] A short delay of just a few months does not prejudice Defendants, particularly when the stay will clarify whether any additional discovery at all is needed in this case. In contrast, allowing discovery to proceed if it is ultimately deemed unnecessary when the claim is dismissed would be highly prejudicial. This factor thus strongly supports a stay.

In sum: all three factors decisively support granting a brief stay until the Court rules on BBAM's MTD. This alone is enough for the Court to grant a stay. Additionally, however, Defendants fail to show that their discovery requests are supported by the requisite good cause.

## IV. **DEFENDANTS DO NOT HAVE GOOD CAUSE TO SEEK ADDITIONAL DISCOVERY**

Defendants must show good cause to depart from the Court's case suspension order and take additional discovery. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). At best, Defendants argue good cause exists because they "only recently discovered the facts that form the basis for the [UCL claim]." Dkt. 130-1 at 5. Defendants specifically claim that they "only learned of the bases for the [UCL claim] during

---

[6] On December 15, 2021, the parties jointly moved to extend the briefing schedule for the MTD. Dkt. 147. If the Court grants the motion, the MTD will be fully briefed by February 7, 2021. *Id.* at 3.

discovery, primarily through the deposition testimony of Plaintiffs' witnesses and a third-party witness." *Id.* at 6.

The problem with Defendants' recent discovery theory is that information regarding a company's broker-dealer licenses—the sole purported basis of their UCL claim—is publicly available. *See* MTD at 17 n.5. Additionally, by last August, Defendants had questioned BBAM's 30(b)(6) witness regarding broker-dealer licenses. *Id.* at 17. Thus, Defendants had the information they claimed that they needed by at least last summer and could have sought to add the UCL claim then but elected not to and unduly delayed until after the close of discovery. There is no good cause to allow them to obtain this discovery now.

## V.   BBAM'S CROSS-MOTION FOR A PROTECTIVE ORDER UNDER RULE 26(c) SHOULD BE GRANTED FOR ALL THE SAME REASONS

BBAM has shown that all three factors strongly weigh in favor of a stay and thus good cause exists for a protective order. Under Rule 26(c), a court may issue a protective order to stay discovery upon a showing of good cause. *Ema Fin.*, 336 F.R.D. at 79. Courts routinely find that a pending dispositive motion constitutes good cause where the motion presents substantial arguments for dismissal, the sought discovery is broad, and the other party would not be prejudiced by a stay. *See, e.g.*, *id.* at 84 (entering protective order staying discovery pending disposition of a motion to dismiss); *Hong Leong*, 297 F.R.D. at 72 (entering protective order staying discovery pending disposition of a motion to dismiss); *Integrated Sys. & Power, Inc.*, 2009 WL 2777076, at *1 (entering protective order staying discovery pursuant to Rule 26(c) pending disposition of a motion to dismiss). BBAM has presented substantial arguments for dismissal, Defendants seek broad and far-ranging discovery, and Defendants will not be prejudiced by a brief stay. There is thus good cause for a protective order staying discovery related to the UCL claim until after the Court rules on the MTD.

## <u>CONCLUSION</u>

The outcome of BBAM's pending MTD is a pivot point in the case. If the Court grants the MTD, then Defendants' Motion for Additional Discovery is moot and the case will proceed on BBAM's trademark and false advertising claims. If, on the other hand, the Court denies BBAM's MTD, then full discovery must commence so that BBAM can adequately understand and defend itself from Defendants' new claim. It makes little sense to hurtle into expansive discovery that is premature, expensive, and wasteful, when a short delay will clarify if discovery is needed at all. BBAM accordingly requests that the Court deny Defendants' Motion for Additional Discovery and grant BBAM's Motion for a Protective Order.

Dated: December 21, 2021

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>Orrick, Herrington & Sutcliffe LLP</td></tr>
<tr><td></td><td>By: <i>/s/ Diana M. Rutowski</i></td></tr>
<tr><td></td><td>Diana M. Rutowski</td></tr>
<tr><td></td><td>Diana M. Rutowski<br>(Admitted <i>pro hac vice</i>)<br>drutowski@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025-1015<br>Telephone: +1 650 614 7400<br>Facsimile: +1 650 614 7401</td></tr>
<tr><td>Brian E. Spears<br>Federal Bar No. ct14240<br>Ivan J. Ladd-Smith<br>Federal Bar. No. ct30972<br>SPEARS MANNING & MARTINI, LLC<br>2425 Post Road Suite 203<br>Southport, CT 06890<br>Telephone: 1-203-292-9766<br>Fax: 1-203-292-9682</td><td></td></tr>
<tr><td></td><td>Nathan Shaffer<br>(Admitted <i>pro hac vice</i>)<br>nshaffer@orrick.com<br>Caroline G. Hirst<br>(Admitted <i>pro hac vice</i>)<br>chirst@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP</td></tr>
</table>

The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Plaintiffs
BBAM AIRCRAFT MANAGEMENT LP
and BBAM US LP

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2021, a copy of the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing. Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or

by mail to anyone unable to accept electronic filing. Parties may access this filing through the

Court's CM/ECF system.

_/s/ Diana M. Rutowski_
Diana M. Rutowski

Diana M. Rutowski
(Admitted _pro hac vice_)
drutowski@orrick.com
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401