**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BBAM AIRCRAFT MANAGEMENT LP, and BBAM US LP, <br><br> Plaintiffs and Counterclaim-Defendants, <br><br> vs. <br><br> BABCOCK & BROWN LLC, BURNHAM STERLING & COMPANY LLC, BABCOCK & BROWN SECURITIES LLC, BABCOCK & BROWN INVESTMENT MANAGEMENT LLC, <br><br> Defendants and Counterclaim-Plaintiffs. | Civil Action No. <br> 3:20-cv-01056-OAW |

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' CROSS-MOTION FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND .......................................................................................................... 1

    A. Plaintiffs' "Background" Allegations are Misleading ............................................ 1

    A. Procedural History Relevant to Defendants' Motion.............................................. 3

III. ARGUMENT ................................................................................................................ 4

    A. Plaintiffs' Arguments in the MTD on the UCL Counterclaim Lack Merit and Do Not Support a Stay. ..................................................................................................... 4

    B. Defendants Do Not Seek Discovery Into "Wide-Ranging Issues." ......................... 7

    C. A Stay Would be Prejudicial and Inconsistent with the Prior Management of this Case.................................................................................................................... 8

    D. Plaintiffs Failed to Rebut the Good Cause for Additional Discovery Set Forth in Defendants' Motion. ........................................................................................ 10

IV. CONCLUSION........................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AngioScore, Inc. v. TriReme Med., LLC*,
   70 F. Supp. 3d 951 (N.D. Cal. 2014) ........................................................................................5

*Bowen v. Ziasun Techs., Inc.*,
   116 Cal. App. 4th 777 (2004), *as modified on denial of reh'g* (Apr. 7, 2004) .........................5

*Car-Freshener Corp. v. Getty Images, Inc.*,
   No. 7:09-CV-01252, 2010 U.S. Dist. LEXIS 156238 (N.D.N.Y. Sept. 30,
   2010) ........................................................................................................................................4

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
   19 Cal. 4th 1036 (1999) ...........................................................................................................6

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012) .....................................................................................................8

*Guiffre v. Maxwell*,
   No. 15 Civ. 7433 (RWS), 2016 U.S. Dist. LEXIS 6638 (S.D.N.Y. Jan. 19,
   2016) ....................................................................................................................................4, 7

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
   214 Cal. App. 4th 544 (2013) ..................................................................................................6

*Norwest Mortg., Inc. v. Superior Ct.*,
   72 Cal. App. 4th 214 (1999) ....................................................................................................6

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ..................................................................................................5

*SEC v. Bravata*,
   No. 09-12950, 2009 U.S. Dist. LEXIS 64609 (E.D. Mich. July 27, 2009) ..............................6

*SEC v. Martino*,
   255 F. Supp. 2d 268 (S.D.N.Y. 2003) ......................................................................................6

*Vista Food Exch. v. Lawson Foods*,
   No. 1:17-cv-07454 (ALC), 2018 U.S. Dist. LEXIS 239431 ....................................................4

*Waterbury Hosp. v. U.S. Foodservice, Inc.*,
   No. 3:06-CV-1657 (CFD)(TPS), 2007 U.S. Dist. LEXIS 7320 (D. Conn. Feb.
   1, 2007) ....................................................................................................................................9

**Statutes**

California Unfair Competition Law ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................................ 11

Rule 12(a)(4)(A) ........................................................................................................................ 10

Rule 15(a)(1)(A) ........................................................................................................................ 11

Rule 15(a)(1)(B) ........................................................................................................................ 11

Rule 26(b)(1) .......................................................................................................................... 3, 11

Rule 30(a)(2)(A) and 26(b)(1)-(2) ............................................................................................ 11

Rule 30(b)(1) ............................................................................................................................... 8

Rule 30(b)(6) ..................................................................................................................... 8, 10, 11

I. **INTRODUCTION**

Defendants and Counterclaim-Plaintiffs ("Defendants") have moved the Court for leave from the current case suspension to conduct limited additional discovery related to their counterclaim against Plaintiffs and Counterclaim-Defendants ("Plaintiffs") alleging violations under California Unfair Competition Law (the "UCL Counterclaim".) (*See* Dkts. 130 & 130-1, the "Motion".) Plaintiffs' combined brief in opposition to the Motion and in support of their own Cross-Motion For a Protective Order, (Dkt. 150-1, the "Cross-Motion"),[1] asks the Court to stay further discovery into the UCL Counterclaim until after the resolution of its motion to dismiss the same, (Dkt. 142, the "MTD".) There is no reason to wait until after the MTD is denied for Defendants' requested discovery, which is extremely narrow and has defined boundaries. Plaintiffs have not described any specific prejudice that would arise from permitting Defendants to take two more depositions and serve additional written discovery requests within the limits of the Federal Rules. Waiting would only risk a longer delay of the trial, which is why the parties previously engaged in discovery while the Court resolved Defendants' earlier motion to dismiss Plaintiffs' claims. But now that the shoe is on the other foot, Plaintiffs want to deviate from that customary practice. The Court should reject Plaintiffs' invitation, deny their Cross-Motion for a protective order, and grant Defendants' Motion for additional limited discovery.

II. **BACKGROUND**

A. **Plaintiffs' "Background" Allegations are Misleading.**

Although Defendants recognize this brief is not the appropriate vehicle to adjudicate the merits of Plaintiffs' claims, two representations made in the "Background" section of their Cross-

---

[1] Per the Court's email dated December 22, 2021, Defendants are separately filing a reply brief in support of their Motion and a response in opposition to Plaintiffs' Cross-Motion, both substantively identical because the motions rely upon the same arguments and set of facts.

Motion must be addressed. First, neither Plaintiff is named "Babcock & Brown Aircraft Management." (*See* Dkt. 150-1 at 2.) While Plaintiffs previously used that name prior to 2010, their management team purposefully changed the corporate name and form of Babcock & Brown Aircraft Management LLC to BBAM Aircraft Management LP in 2010 because Babcock & Brown LP—the corporate parent from which Plaintiffs' management team acquired the LLC—was embroiled in a financial scandal and undergoing liquidation. Since then, Plaintiffs have continuously and consistently operated as "BBAM Aircraft Management" (no acronym). Their current business and associated goodwill is recognized in the industry by the BBAM mark, not by either the BABCOCK & BROWN or B&B marks.

Second, Plaintiffs pretend that Defendants' founder and principal is a jilted former BBAM employee. Michael Dickey Morgan was never Plaintiffs' employee. Prior to and until 2010, Mr. Morgan was the head of the aviation advisory practice at Babcock & Brown LP. His practice in advising airlines and other clients on debt financing and capital sourcing was always separate and apart from BBAM's business focused on operating leases. When Babcock & Brown LP folded, he founded Defendant Burnham Sterling & Company LLC and continued providing the same advisory services to airlines and other clients. Years later—after Babcock & Brown LP's trademark registration lapsed and after seeing Plaintiffs strictly using the name BBAM—Mr. Morgan formed two new entities with "Babcock & Brown" in their names and changed the name of a third entity to incorporate the same. He also publicly registered the BABCOCK & BROWN and B&B marks around the world. Still, Defendants' enterprise has always operated and continues to operate with Burnham Sterling as the principal operating entity and primary brand name.

After nearly a decade of Defendants innocuously referring to Mr. Morgan's tenure at Babcock & Brown LP in their marketing materials, and several years after the first BABCOCK &

BROWN registration issued to Defendants, Plaintiffs filed this lawsuit. Plaintiffs accuse Defendants of trading off their goodwill by using the "Babcock & Brown" mark. They seek to disgorge all of Defendants' profits since 2010, including those earned by Defendant Babcock & Brown Securities LLC ("B&B Securities"), a broker-dealer registered with the SEC and licensed to, among other things, sell securities and receive transaction-based compensation.

### B. Procedural History Relevant to Defendants' Motion.

During discovery that occurred this fall, Defendants came to learn that Plaintiffs were engaged in broker-dealer activities without the required licenses. When the Court denied Defendants' own motion to dismiss Plaintiffs' claims (Dkt. 89), Defendants timely filed their answer and counterclaims, and then timely amended the latter to include the UCL Counterclaim alleging Plaintiffs were violating California's Unfair Competition Law ("UCL"). The UCL Counterclaim is very detailed but ultimately straightforward and plainly states a violation of the UCL based on Plaintiffs' failure to secure the required broker-dealer licenses, therefore enabling it to unfairly compete by artificially depressing its prices, resulting in injury to Defendants.

Defendants' Motion simply asks for the opportunity to conduct narrow and focused discovery into the UCL Counterclaim, now that the claim is fully embraced within the scope of Rule 26(b)(1). Good cause exists because the factual basis for the claim was uncovered during recent discovery in the fall and Plaintiffs' promptly and timely filed the UCL Counterclaim thereafter. Given the litany of pending motions, the requested additional discovery is not likely to extend this case at all.

Desperate to block any and all discovery related to Defendants' UCL Counterclaim, Plaintiffs' seek a protective order that would delay further discovery until after the Court rules on the MTD. Plaintiffs offer a host of arguments that misconstrue the claim and exaggerate the

requested discovery. The two additional depositions and further written discovery could very well be completed before this Court rules on the MTD. If, as Plaintiffs suggest, the counterclaim discovery would not begin until that motion is denied, then a delay is all but certain. Indeed, this is undoubtedly the reason that the parties conducted full and sweeping discovery of Plaintiffs' claims during the pendency of Defendants' earlier motion to dismiss.

### III. ARGUMENT

Defendants' California UCL Counterclaim presents a classic unfair competition theory and Defendants have pled in great detail the factual and legal basis for it. While Plaintiffs posit that dismissal is a sure thing, they are wrong. They also mischaracterize the requested discovery, which on its face is narrow and focused, and overlook the prejudice to Defendants that a stay would impose. Because Plaintiffs have failed to meet their burden of establishing any of the three good cause factors weigh in favor of a stay, their Cross-Motion should be denied. *See Vista Food Exch. v. Lawson Foods*, No. 1:17-cv-07454 (ALC), 2018 U.S. Dist. LEXIS 239431, at *2 n.1 ("The movant bears the burden as to all three factors."). Likewise, because Plaintiffs have failed to rebut the good cause set forth in Defendants' Motion, the Court should grant it and allow the limited additional discovery on the UCL Counterclaim.

**A. Plaintiffs' Arguments in the MTD on the UCL Counterclaim Lack Merit and Do Not Support a Stay.**

Defendants direct the Court to their forthcoming response in opposition to the MTD.[2] As previewed below, Defendants have strong arguments in opposition to dismissal, so this factor does not weigh in favor of granting a stay. *See Guiffre*, 2016 U.S. Dist. LEXIS 6638, at *3-4 ("With

---

[2] Plaintiffs filed their MTD before their Cross-Motion, so their arguments for dismissal of the UCL Counterclaim made in the former were ready to summarize for inclusion in the latter. (*See* Dkt. 142; Dkt. 150-1 at 7-10.) The timing for Defendants' corresponding filings is inverted, as this brief will be filed a week before Defendants' response in opposition to Plaintiffs' MTD. (*See* Dkt. 152.)

4

strong arguments on both sides, [movant's] argument does not rise to a level of the requisite 'strong showing' that [non-movant's] claim is unmeritorious."); *see also Car-Freshener Corp. v. Getty Images, Inc.*, No. 7:09-CV-01252, 2010 U.S. Dist. LEXIS 156238, at *3-5 (N.D.N.Y. Sept. 30, 2010) (granting discovery and noting "discovery should not routinely be stayed simply on the basis that a motion to dismiss has been filed").

***The UCL Counterclaim does not fall within the securities law exception to California's UCL.*** The basis for Defendants' UCL Counterclaim is simple: Plaintiffs did not secure the necessary broker-dealer licenses and, as such, have engaged in unfair competition by unfairly undercutting Defendants on price. The predicate act for the UCL Counterclaim is the failure to secure a license. Plaintiffs, however, recast it as a transaction-based claim in an attempt to convince the Court that the UCL does not apply. (Dkt. 150-1 at 8 (quoting *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 790 (2004), *as modified on denial of reh'g* (Apr. 7, 2004)).) But Defendants' UCL Counterclaim is not a transaction-based claim. And the exception in *Bowen* does not apply here because the predicate acts "do not arise from any stock transactions between the parties." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 715 (2007). The securities transactions are merely incidental to Defendants' counterclaim, which alleges unfair competition based on Plaintiffs' artificially depressed pricing enabled by avoiding costs to obtain the necessary licenses to conduct their broker-dealer activities. Defendants' UCL Counterclaim is at the *core* of what the California UCL is designed to protect. *See AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014).

***Defendants' UCL Counterclaim is not an extraterritorial application of the law.*** The fact that Japanese investors are involved in Plaintiffs' unlicensed activities is another incidental aspect of the claim. Plaintiffs' misconduct happens in this country, through their unlicensed U.S.- and

5

California-based broker-dealer activities, and harming Defendants in this country. From California and the U.S., Plaintiffs manage U.S.-based assets underlying the securities, actively recruit and solicit investors, and receive transaction-based compensation. In fact, Plaintiffs are not compensated in the United States unless and until the securities are sold. Performing these activities without a broker-dealer license and without its attendant costs gives Plaintiffs a significant competitive advantage in the market. Distilled down, the UCL Counterclaim thus plainly alleges Defendants are being "harmed by wrongful conduct occurring in California." *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224–25 (1999) (discussing *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1063-64 (1999) (noting California's state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California).

***Defendants have adequately alleged standing under the California UCL.*** Courts regularly find allegations of lost revenue, wasted marketing costs, and other expenses incurred or lost due to a competitor's illegal conduct sufficient to confer statutory standing under the UCL. *See, e.g.*, *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 561 (2013). Plaintiffs construct a strawman argument to avoid the implications of that well-settled law and pretend Defendants' standing allegations are limited to the broker-dealer license fees paid only by B&B Securities. (Dkt. 142 at 27.) But Defendants' harm stems from Plaintiffs' illicit cost avoidance and resulting ability to undercut Defendants' prices—harm that was suffered by each Defendant independent of whether it is a registered broker-dealer or not.

***Defendants have adequately alleged a substantive violation of the California UCL***. Whether an entity is acting as an unlicensed broker-dealer is determined based on many factors, including the "regularity of participation" in the securities offerings and the receipt of transaction-

6

based compensation. *SEC v. Bravata*, No. 09-12950, 2009 U.S. Dist. LEXIS 64609, at *8 (E.D. Mich. July 27, 2009); *accord SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003). Defendants' UCL Counterclaim alleges that Plaintiffs regularly and actively solicit prospective investors from and within California and the U.S., prepare credit analysis and reports for use by those investors, supervise from the U.S. and California foreign employees whose sole responsibility is placing securities with investors, and receive transaction-based compensation flowing from the sale of securities structured using U.S.-based assets. Accordingly, the UCL Counterclaim plausibly alleges that Plaintiffs engage in unlicensed broker-dealer activities in California, in violation of both California and federal law.

***The UCL Counterclaim does not unduly expand the scope of this case***. Plaintiffs are wrong to argue the UCL Counterclaim is entirely unrelated to Plaintiffs' claims. A key element of Plaintiffs' claims is showing the extent to which the parties compete. Thus, where and how the parties operate is already a key focus in this case, regardless of whether or not the UCL Counterclaim remains. The factual overlap between it and Plaintiffs' claims is also undeniable given that Defendants learned the vast majority of facts for their UCL Counterclaim during prior discovery into and defined by Plaintiffs' claims.

**B.  Defendants Do Not Seek Discovery Into "Wide-Ranging Issues."**

Plaintiffs mischaracterize Defendants' request and conflate it with the discovery Plaintiffs apparently believe *they* will want. Plaintiffs' anticipated discovery needs are distinct from Defendants' narrow and targeted requests. Plaintiffs' belief that they, too, will need additional discovery should have no bearing on the outcome of Defendants' Motion. *Cf. Guiffre v. Maxwell*, No. 15 Civ. 7433 (RWS), 2016 U.S. Dist. LEXIS 6638, at *4 (S.D.N.Y. Jan. 19, 2016) (denying defendant's motion to stay because "[n]ormal discovery in a limited matter does not alone rise to

the level of good cause.").

Defendants ask for three specific things. First, Defendants request leave to immediately serve written discovery requests *within existing limits under the Rules*. (Dkt. 130-1 at 1-2.) Contrary to Plaintiffs' assertion, Defendants are not asking for a "blank check on written discovery…with no limitation." (Dkt. 150-1 at 12.) Defendants are not even seeking *additional* written discovery, only leave to serve it immediately notwithstanding the current suspension of all case deadlines. Second, Defendants request a single additional Rule 30(b)(1) deposition, not to exceed four (4) hours. (*See* Dkt. 130-1 at 2.) And third, Defendants ask for another Rule 30(b)(6) deposition of Plaintiffs, not to exceed seven (7) total hours, on limited topics and documents. (*See id.*) Defendants' Motion does not seek any other relief.

**C. A Stay Would be Prejudicial and Inconsistent with the Prior Management of this Case.**

From the outset, this case has been prosecuted in a manner to keep it progressing toward trial. Defendants previously moved to dismiss all of Plaintiffs' claims, yet the parties still engaged in discovery on them while Defendants' motion remained pending for over 11 months. (Dkts. 39 & 89.) Plaintiffs raised no concerns then about the risk of wasting time and money on discovery in the event their claims would have been dismissed. Instead, they charged forward and demanded broad discovery into virtually all aspects of Defendants' business for the past 10 years. Now that a pending counterclaim was filed targeting their own misconduct (discovered during a period when Defendants' own motion to dismiss was pending), Plaintiffs are taking the opposite position.

The Court has broad discretion to shape discovery in the matters before it. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process."). A stay would be inconsistent with the manner in which this case has been managed to date because the parties

previously engaged in discovery without awaiting the resolution of Defendants' motion to dismiss. (*See* Dkts. 6 & 80.) The Court should not depart from that practice now.

Plaintiffs assert, without support, that the requested stay would be for only a few months. (*See* Dkt. 150-1 at 13-14.) Respectfully, both history and the present realities suggest it would actually last much longer. Defendants' earlier motion to dismiss remained pending for nearly a year. (Dkts. 39 & 89.) Plaintiffs' MTD is longer and more complex than that motion. (*See* Dkt. 142.) This case was reassigned from Judge Bryant to Judge Williams on December 14, 2021. (Dkt. 144.) There are currently no less than a half dozen motions of substance pending in this matter, not even including the many more motions to seal and take judicial notice. Plaintiffs' MTD was filed relatively recently on December 13, 2021, so it is likely to be decided toward the end of that series. There is no reason to keep Defendants' UCL Counterclaim at a standstill until that motion is eventually resolved. *See Waterbury Hosp. v. U.S. Foodservice, Inc.*, No. 3:06-CV-1657 (CFD)(TPS), 2007 U.S. Dist. LEXIS 7320, at *6-7 (D. Conn. Feb. 1, 2007) (denying stay after finding that a stay pending a ruling on a motion to dismiss would cause delay greater than the "few months" asserted by moving party where the motion was not yet fully briefed, motion to dismiss was complex and involved intricate legal argument, and motion fell behind numerous other motions currently pending before the court).

Waiting on the requested discovery until after the MTD's denial would risk creating an unnecessary and prejudicial delay of trial. That risk is especially heightened if Plaintiffs actually intend to pursue all the discovery they argue that they will need. The parties can use the months ahead to position the UCL Counterclaim for summary judgment and trial while the Court decides the MTD and the many other pending motions.

Plaintiffs' concern about the requested discovery potentially wasting party resources

strains credulity. (*See* Dkt. 150-1 at 1-2.) So far, they have prosecuted with rare vigor their claims complaining of conduct that they have known about for years. They demanded Defendants turn over a decade's worth of ESI, are still pursuing a damages theory that would strip Defendants of all the profits ever received, and have filed motions aimed at other *motions*, (*see, e.g.*, Dkt. 124). Clearly, Plaintiffs are not short on resources. (*See* Dkt. 150-1 at 2 ("Today…the third largest manager of leased commercial jet aircraft in the world and the largest dedicated manager of third-party capital in the sector, with more than $28.9 billion of aircraft assets under management.").) Plaintiffs will not be prejudiced if Defendants are allowed to proceed with the requested discovery.

### D. Plaintiffs Failed to Rebut the Good Cause for Additional Discovery Set Forth in Defendants' Motion.

As explained in Defendants' Motion, there is good cause to grant the limited additional discovery requested by Defendants. (Dkt. 130-1 at 5-7.) Defendants only learned about the factual basis for their UCL Counterclaim recently, including via deposition testimony taken as recently as October 13, 2021, the same day as their original answer deadline. Plaintiffs argue in rebuttal that broker-dealer licenses are publicly available and Defendants already asked Plaintiffs' Rule 30(b)(6) witness whether they held any in August. (Dkt. 150-1 at 15.) According to Plaintiffs, there is no good cause for the additional discovery because Defendants unduly delayed in bringing their claim until weeks later and after the close of discovery. (*Id*.) There is no merit to this argument.

First, discovery in this matter was not closed when Defendants raised their UCL Counterclaim. In response to a request from Plaintiffs to modify the scheduling order to extend the discovery deadline, Judge Bryant entered an order on October 27, 2021 suspending the current scheduling order and stating that a new deadline for the closure of discovery would be set once the parties' pending discovery motions had been decided. (Dkt. 104.)

Second, there was no delay on the part of Defendants in raising this counterclaim.

10

Defendants' answer deadline under Rule 12(a)(4)(A) was October 13, 2021, two weeks after the Court denied Defendants' motion to dismiss. (Dkt. 89.) Defendants requested a two-week extension of that deadline, in part to allow them to fully evaluate the recently discovered facts. (Dkt. 130-1 at 2-3.) Ultimately, Defendants filed their initial Answer and Counterclaims on October 13, 2021, without the UCL Counterclaim. (Dkt. 95.) Plaintiffs filed a motion to dismiss twenty-one days later on November 2, 2021. (Dkt. 110.) Defendants had planned to file that same day an amended pleading to add the UCL Counterclaim, per Rule 15(a)(1)(A). In any event, Defendants filed their First Amended Answer and Counterclaims the following week, well before the deadline under Rule 15(a)(1)(B). (Dkt. 118 (FUS).) There was no delay.

Third, the deposition testimony from Plaintiffs' Rule 30(b)(6) witness in August did not provide the necessary basis for Defendants to allege their UCL Counterclaim. It was not until months later, after additional depositions, that Defendants had the requisite factual basis to plead it. (Dkt. 130-1 at 6.) This is because the claim entails much more than Plaintiffs' lack of a broker-dealer license. (*See* Dkt. 118 at ¶¶ 84-131.) Defendants also had to learn about the role Plaintiffs played in the Japanese lease transactions at-issue, and how not having a broker-dealer license impacted Plaintiffs' pricing of those transactions. By way of example, during a deposition of Plaintiffs' witness on October 12, 2021, Defendants learned who is involved in pricing the Japanese leases at-issue, as well as facts about the economic benefit Plaintiffs enjoy through avoiding licensing costs. (*See* Dkt. 131 (FUS) at 18:3-12 and 59:8-17.)

Plaintiffs have not specifically contested Defendants' arguments under Rule 30(a)(2)(A) and 26(b)(1)-(2). There is nothing to suggest the requested depositions would be "unreasonably cumulative or duplicative" or could be "obtained from some other source," that Defendants already had ample opportunity to obtain the information they seek, or that the proposed discovery is outside

the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). Thus, the Court should grant the Motion.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court grant their Motion for limited, additional discovery and deny Plaintiffs' Cross-Motion for a protective order.

                                              Respectfully submitted,

Dated: January 11, 2022                    /s/ Michael J. Rye
                                                                Michael J. Rye (ct18354)
                                                                CANTOR COLBURN LLP
                                                                20 Church Street, 22nd Floor
                                                                Hartford, CT 06103
                                                                Tel: (860) 286-2929
                                                                Fax: (860) 286-0115
                                                                mrye@cantorcolburn.com

Heather J. Kliebenstein, *Pro hac vice*
  Minnesota Bar No. 0337419
Elisabeth S. Muirhead, *Pro hac vice*
  Minnesota Bar No. 0399590
MERCHANT & GOULD P.C.
150 South Fifth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 332-9081
hkliebenstein@merchantgould.com
emuirhead@merchantgould.com

Ian G. McFarland, *Pro hac vice*
  Tennessee Bar No. 030549
MERCHANT & GOULD P.C.
800 S. Gay Street, Suite 2150
Knoxville, Tennessee 37932
Telephone: (865) 380-5960
imcfarland@merchantgould.com

Caryn Schechtman, Pro hac vice
  NY Bar No. 2910420
Thomas J. Alford, Pro hac vice
  NY Bar No. 5819958
DLA Piper LLP
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4879
Caryn.schechtman@dlapiper.com
Thomas.alford@dlapiper.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2022, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Michael J. Rye
Michael J. Rye, Esq.