UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BBAM Aircraft Management LP | : | Case No. 3:20-cv-1056 (OAW) |
| BBAM US LP | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| Babcock & Brown LLC | : | |
| Babcock & Brown Securities LLC | : | |
| Burnham Sterling & Company LLC | : | |
| Babcock & Brown Investment | : | |
| Management LLC | : | AUGUST 29, 2022 |
| *Defendants* | | |

### RULING ON PLAINTIFFS' MOTION TO AMEND COMPLAINT

This is a trademark infringement action concerning the use of the "BABCOCK & BROWN" and "B&B" trademarks in the aircraft financing industry. BBAM Aircraft Management LP and BBAM US LP (collectively "BBAM" or "Plaintiffs"), operate a large-scale commercial aircraft leasing company. BBAM maintains that its predecessor, Babcock & Brown LP, granted BBAM an exclusive license to use the "BABCOCK & BROWN" mark in the aviation field, which BBAM has continuously used for more than thirty years. Am. Compl. at ¶ 18, ECF No. 32. BBAM further alleges that a former executive of Babcock and Brown LP, Michael Dickey Morgan ("Mr. Morgan"), has used the "BABCOCK & BROWN" mark, as well as the abbreviated "B&B" mark, through his various entities, including some of BBAM's direct competitors: Burnham Sterling & Company LLC (Burnham Sterling & Co.), Babcock & Brown LLC ("B&B LLC"), Babcock & Brown Securities LLC ("B&B Securities LLC"), and Babcock & Brown Investment Management LLC ("BBIM") (collectively "Burnham Sterling" or "Defendants"). *Id.* at ¶¶ 29–44. Specifically, BBAM alleges Defendants have used BBAM's marks in connection

with goods and services in the aircraft leasing and asset management industries. *Id.* at ¶ 29. BBAM's ten-count complaint includes claims of trademark infringement, false designation of origin, false advertising, and unfair competition. *Id.* at ¶¶ 48–118. BBAM seeks to cancel the trademarks issued to B&B LLC for the following word marks: "B & B", "B&B", and "BABCOCK & BROWN". Lastly, BBAM requests an order refusing Burnham Sterling & Co.'s pending trademark application for the "BURNHAM BABCOCK & BROWN" word mark. Burnham Sterling maintains that BBAM has abandoned its use of the marks.

Pending before the court is BBAM's motion for leave to file a second amended complaint. ECF No. 82. BBAM seeks to amend the complaint for the following purposes:

(1) To include alternate grounds for the cancellation of the registered trademarks owned by B&B LLC, because not only are these marks likely to cause confusion, but BBAM has discovered that their registrations may be void;

(2) to include alternate grounds for refusal of Burnham Sterling & Co.'s pending trademark application because not only is it likely to cause confusion, but BBAM has discovered that the application may be void; and

(3) to supplement the complaint's allegations as to BBAM's current relationship with its licensee, Fly Leasing Limited ("Fly Leasing").

Burnham Sterling opposes the motion to amend, stating that BBAM has not demonstrated good cause to warrant an amendment, and that the alternate grounds for cancelling or refusing the trademark applications should be resolved by the United States Patent and Trademark Office. Defendants expressed at oral argument that they do not oppose the amendments as they relate to Fly Leasing.

For the reasons stated herein, BBAM's motion for leave to file a second amended complaint is **<u>GRANTED</u>**. BBAM has demonstrated good cause by acting with diligence to amend the complaint. Moreover, amending the complaint at this stage of the action,

where the pleadings have not yet closed, and discovery is suspended, will not prejudice Burnham Sterling. **BBAM hereby is directed to file a Second Amended Complaint which incorporates the proposed amendments in its Motion for Leave to Amend.**

I. <u>**BACKGROUND**</u>

BBAM filed the instant action on July 27, 2020. Burnham Sterling moved to dismiss the complaint on September 4, 2020. ECF No. 26. In response, BBAM filed an amended complaint on September 25, 2020. ECF No. 32. Burnham Sterling then filed another motion to dismiss the amended complaint on October 16, 2020. ECF No. 39. During the pendency of this motion, the parties engaged in extensive discovery and the court extended the scheduling order twice, resulting in a discovery deadline of October 15, 2021. ECF No. 61 & 80. BBAM filed the instant motion to amend the complaint on September 2, 2021. ECF No. 82.

The court thereafter denied Burnham Sterling's motion to dismiss on September 29, 2021 (ECF No. 89). Burnham Sterling filed an answer with a counterclaim on October 13, 2021. ECF No. 95. The parties continued discovery while BBAM's motion to amend was pending, and both sides filed motions to compel. ECF No. 93 & 98. On October 27, 2021, the court suspended the scheduling order in light of the pending discovery motions. ECF No. 104. BBAM moved to dismiss the counterclaim (ECF No. 110), and Burnham Sterling filed an amended answer with counterclaims on November 11, 2021. ECF No. 118. Burnham Sterling has moved to lift the case schedule suspension to obtain discovery on its counterclaim (ECF No. 130), but BBAM has sought a protective order

(ECF No. 150) to stay discovery until after the court has adjudicated its motion to dismiss Burnham Sterling's counterclaims (ECF No. 139).

## II. **BBAM'S MOTION TO AMEND**

In its amended complaint, BBAM seeks cancellation of four trademarks[1] registered to B&B LLC because the marks are "likely . . . to cause confusion, cause mistake or to deceive with respect to BBAM's senior marks."  Am. Compl., ECF No. 32 at ¶¶ 100; 104; 108; 112.  In addition to its likelihood of confusion theory, BBAM now seeks leave to amend the complaint to include an alternate ground for cancellation.  Specifically, BBAM alleges that cancellation is warranted because each of the four trademarks were filed as intent-to-use applications,[2] but B&B LLC failed to actually use the marks in commerce prior to the statutory deadline under the Lanham Act. *See* 15 U.S.C. § 1051(d) (requiring intent-to-use trademark applications to be supplemented by a verified statement of use in commerce, submitted no later than 24 months after issuance of a notice of allowance, else the registration will be deemed abandoned); *see also* 15 U.S.C. § 1127 (defining "use in commerce" for services to mean that the mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce").  BBAM alleges that

---

[1] BBAM seeks to cancel the following trademarks registered to B&B LLC:
- Trademark Registration No. 5,851,855 (the "B & B" word mark for use in investment management);
- Trademark Registration No. 6,037,338 (the "B&B" word mark for use in investment banking);
- Trademark Registration No. 5,643,846 (the "BABCOCK & BROWN" word mark for use in investment management);
- Trademark Registration No. 5,769,928 (the "BABCOCK & BROWN" word mark for use in investment banking).

[2] Trademark applications may be filed on an "intent-to-use" basis if an applicant has not yet used the mark in commerce but has a good faith intention to do so in the future. 15 U.S.C. 1051(d) (outlining procedure for "application for bona fide intention to use trademark").

it did not learn of B&B LLC's failure to use the marks in commerce until the July 27–28 deposition of B&B LLC's principal, Mr. Morgan.

BBAM also seeks to include an alternate theory for refusing the pending trademark application for the "BURNHAM BABCOCK & BROWN" mark (Trademark Application No. 86,874,191).  BBAM claims that on January 14, 2021, Burnham Sterling & Co. assigned its entire interest in the mark (and therefore its interest in the pending application) to B&B LLC, without conveying any portion of the business.  BBAM maintains that the assignment is in violation of 15 U.S.C. § 1060(a)(1) which states that "a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of . . . the mark."  BBAM alleges that during Mr. Morgan's deposition, it discovered that Burnham Sterling & Co. did not transfer any portion of its business to B&B LLC, so there now exists an additional theory for refusing the pending application for the "BURNHAM BABCOCK & BROWN" mark.

BBAM's third and final amendment seeks to supplement the complaint's allegations pertaining to Fly Leasing.  The current complaint alleges that BBAM uses the "BABCOCK & BROWN" mark through an affiliate company, Fly Leasing.  Am. Compl. at ¶ 23.  Fly Leasing went public in 2007 under the name Babcock & Brown Air Ltd., however, BBAM controls the company's use of the "BABACOCK & BROWN" mark.  *Id.* BBAM now requests leave to supplement the complaint with new allegations reflecting the recent sale of Fly Leasing, and BBAM's new trademark licensing agreement executed in light of the acquisition.   Specifically, BBAM alleges that Fly Leasing was acquired in August 2021, and that it still retains rights to inspect and maintain quality control over the

Fly Leasing's use of its marks. At oral argument, Burnham & Sterling stated that they do not oppose the amendments with respect to Fly Leasing. Absent any objection, the court hereby **GRANTS** the motion to amend the complaint in accordance with the proposed amendments relating to Fly Leasing.

### III. PROPER FORUM

As an initial matter, the court will address Burnham Sterling's claim that BBAM's proposed theories of cancellation and refusal should be resolved at the United States Patent & Trademark Office ("USPTO") by the Trademark Trial and Appeal Board (TTAB). Under the Lanham Act, district courts are authorized to "order the cancelation of registrations . . . restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. BBAM seeks to cancel four trademarks registered to B&B LLC. Because these trademarks already have been registered, the court has jurisdiction under § 1119 to hear BBAM's cancellation theories – including its newly-proposed theory that the marks are void because they were not used in commerce by the statutory deadline.

Burnham Sterling argues that the Lanham Act does not extend the power to courts to adjudicate disputes over a trademark *application* that has yet to issue as a registration. Although it is true that the Lanham Act does not expressly authorize federal courts to hear matters regarding trademark applications, it does give a court the authority "to rectify the register with respect to the 'registrations' of any party" and therefore "appears to permit rulings on marks other than the one on which a particular claim is founded." *Continental*

*Connector Corp. v. Continental Specialties Corp.*, 413 F. Supp. 1347, 1349 (D. Conn. 1976) (citing the Lanham Act, 15 U.S.C. § 1119).

In *Continental*, the court determined that it had the authority to hear claims pertaining to a trademark application because "the facts concerning the disputed registration [were] going to be litigated in connection with other [trademark] claims" already within the court's jurisdiction. *Id.* at 1350. Many courts have followed the precedent set by Judge Newman in *Continental* and have recognized the power of a federal court to determine the "registerability" of an as-yet-unregistered mark in a lawsuit in which a *different* registered mark is involved, so long as there is a close nexus between the marks. *Somera Capital Mgmt., LLC v. Somera Rd., Inc.*, 2020 U.S. Dist. LEXIS 85932, at *16 (S.D.N.Y. May 15, 2020) (collecting cases where courts recognized the authority to order cancellation or refusal of a trademark *application* because there is a sufficient nexus between the mark applied for and marks already registered which are disputed before the court).

Here, "BABCOCK & BROWN"; "B&B"; and "B & B" are the registered marks at issue. These marks are registered for use in investment services; BBAM asserts that this causes likely confusion. The mark pending registration is "BURNHAM BABCOCK & BROWN." The court finds that the registered marks and the pending mark are sufficiently similar to warrant adjudication in the same action. "BURNHAM BABCOCK & BROWN" merely adds one word to the already registered mark of "Babcock & Brown," which undoubtedly is abbreviated as "B&B." At oral argument, Burnham & Sterling suggested that because the claims as to the registered marks (likelihood of confusion), is substantively different from the claims as to the pending mark (invalid assignment), there

7

is good reason to abstain from adjudicating them together. However, the court has not found any legal authority requiring that the "nexus" between a registered mark and a pending mark involve similar claims, rather than the legal requirement that there be similarity of the trademarks themselves. Indeed, because the "BURNHAM BABCOCK & BROWN" is facially similar to the registered marks, the court finds that there exists a sufficient "nexus" permitting the exercise of jurisdiction over the pending mark.

To the extent that Burnham & Sterling argues merely that the TTAB would be a more appropriate forum to resolve the additional theories for cancellation and refusal, the court disagrees. BBAM already has cancellation and refusal claims before this court. Resolving the likelihood of confusion issue before this court, while requiring BBAM to adjudicate its "use of commerce" and invalid assignment theories before the TTAB, would be inefficient. *See Continental*, 413 F. Supp. at 1350 (noting that interests of judicial economy are best served when the overlapping facts between the registered mark and the pending mark are heard together). Indeed, the relevant facts pertaining to the claims already before this court (including any issue of abandonment), likely would be the same facts used to resolve the newly-proposed theories. Therefore, in the interest of judicial economy, BBAM's additional theories of cancellation and refusal shall be heard concurrently with the theories already before this court. Accordingly, the court does not find that the USPTO is better suited to consider BBAM's new theories and thus declines to defer to the USPTO for such assessment.

## IV. <u>GOOD CAUSE TO AMEND</u>

In its motion for leave to amend, BBAM relies on Rule 15, which allows parties to liberally amend a pleading unless the amendment causes "undue delay," is made in "bad faith," or is "futile." *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); Fed. R. Civ. P. 15(a)(2). Throughout its motion, BBAM argues that its proposed amendments are "not futile," would not cause "undue delay," nor is there any evidence of "bad faith." *See* Mot. to Amend, ECF No. 82 at p. 11–13. However, at oral argument, the parties both agreed that the good cause standard of Rule 16—rather than Rule 15—is the appropriate standard of review. The parties' 26(f) report contemplates the applicability of the good cause standard, as it specifies that motions to amend the pleadings after October 30, 2020, "will require . . . a showing of good cause for the delay." ECF No. 34 at p. 5–6. The Second Circuit likewise has recognized that when a motion to amend is filed after a set deadline for amending pleadings, all future motions to amend must be reviewed under Rule 16. *See Sacerdote*, 9 F.4th at 115. The court therefore will assess BBAM's motion for leave to amend against the good cause standard set forth by Rule 16.

    a. <u>Diligence in Seeking to Amend</u>

In determining whether there is good cause to amend the complaint, the court must assess whether the movant acted with diligence. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

BBAM maintains that it has acted with diligence because it took prompt action in seeking to amend the complaint after learning the relevant facts. It claims that it discovered the alternate grounds for B&B LLC's trademark cancellation and refusal only after it deposed B&B LLC's principal, Mr. Morgan, on July 27–28, 2021. At his deposition, Mr. Morgan testified that B&B LLC does not conduct any business. After learning that the

marks had not been used in commerce, BBAM contacted Burnham Sterling via a letter dated August 13, 2021, and expressed its intent to assert alternate theories for trademark cancellation.  ECF No. 82-2 at p. 136.  The instant motion to amend was filed on September 2, 2021.  Burnham Sterling maintains that BBAM did not act with diligence because it could have asserted its "use in commerce" theory by accessing B&B LLC's filings with the USPTO, which were publicly available prior to this lawsuit.  Moreover, Burnham Sterling claims that there were "a host of non-suit mechanisms" available to learn about B&B LLC's business dealings, including hiring a third party to perform investigations about whether the trademarks are actually being used in commerce.

The court finds that BBAM has acted with diligence in seeking to amend the complaint.  BBAM moved to amend the complaint within two months after it had discovered that B&B LLC does not conduct any business.  *See Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148-49 (S.D.N.Y. 2012) (finding diligence and allowing amendment filed two months after facts allegedly learned during discovery); *Permatex, Inc. v. Loctite Corp.*, No. 03 Civ. 943, 2004 U.S. Dist. LEXIS 10953, at *3 (S.D.N.Y. June 17, 2004) (holding that Plaintiff exhibited diligence by moving to amend fewer than two months after deposition that brought new information to light).

Moreover, the court has no reason to doubt BBAM's claim that it did not learn of its "use in commerce" cancellation theory until after discovery.  Indeed, each of B&B LLC's publicly-filed statements of use for the contested trademarks (of which the court hereby takes judicial notice) claims that "[t]he mark is in use in commerce." [3]  Statement of Use,

---

[3] Under Rule 201(b)(2), a court may take judicial notice of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  This includes "information on an official government website."  *Perez v. Ahlstrom Corp.*, No. CIV.A. 10-CV-1299 (VLB), 2011 WL 2533801, at *2 (D. Conn. June 27, 2011).

Trademark Registration No. 5,643,846, USPTO (filed Oct. 19, 2018); Statement of Use, Trademark Registration No. 5,769,928, USPTO (filed Oct. 19, 2018); Statement of Use, Trademark Registration No. 5,851,855, USPTO (filed July 3, 2019); Statement of Use, Trademark Registration No. 6,037,338, USPTO (filed July 3, 2019).  Each of these statements of use includes an advertising flyer stating that "Babcock & Brown Investment Management offers investment advisory services related to aircraft and other transportation assets" and that "B&B . . . offer[s] financial advisory services related to aircraft[.]"  *Id.*; Am. Compl. at ¶ 40.  BBAM, without any additional evidence, had no duty to doubt the veracity of sworn statements before the USPTO until Mr. Morgan's deposition.  Indeed, learning new facts through discovery routinely has been recognized as a valid basis for allowing a plaintiff to amend the complaint.  *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-cv-10256-GHW, 2021 U.S. Dist. LEXIS 183277, at *121 (S.D.N.Y. Sep. 23, 2021) ("Facts learned during discovery that a plaintiff could not reasonably have known prior to the deadline to amend can demonstrate diligence.").

The same reasoning applies with respect to BBAM's proposed amendment to assert alternate grounds for refusing B&B LLC's pending trademark application.  Although Burnham Sterling alleges that BBAM had the assignment agreement available to it since January 2021, BBAM had no reason to doubt the assignment.  The assignment states that B&B LLC is "acquiring substantially all of [Burnham Sterling & Co's] *business and goodwill appurtenant to* the ["BURNHAM BABCOCK & BROWN"] mark.  Assignment of Trademarks, Trademark Registration No. 86,874,191, USPTO (filed January 14, 2021) (emphasis added); *see also* Burnham Sterling Opp. to BBAM's Mot. to Amend, Kliebenstein Decl., ECF No. 88-1 at ¶ 3.  Therefore, BBAM had no reason to doubt

whether the business was assigned in this transaction – at least not until deposing Mr. Morgan and discovering that B&B LLC does not conduct any business at all.  The court has not found any evidence suggesting that, prior to discovery, BBAM knew of its theory that the application should be refused because the assignment is void.  Therefore, BBAM acted with diligence in moving to amend the complaint so to include the alternate basis for refusing the "BURNHAM BABCOCK & BROWN" mark.

    b.  <u>Prejudice</u>

Turning to the issue of prejudice, an amendment may be prejudicial when it would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  Burnham Sterling advanced several arguments claiming prejudice in its opposition brief, however, it withdrew its claims of prejudice at oral argument.  Regardless, the court will address the claimed prejudice.

In its opposition brief, Burnham Sterling argues that allowing BBAM to amend the complaint late in the discovery process would be "manifestly unfair" to Burnham Sterling, which already has expended resources filing motions to dismiss the prior two complaints.

It is true that BBAM filed its motion to amend on September 2, 2021, just one month before the discovery deadline of October 15, 2021.  ECF No. 80.  However, such action was not near the anticipated resolution of the case.  On October 27, 2021, the court suspended discovery to adjudicate the parties' pending discovery disputes.  ECF No. 104. Each party has filed a motion to compel, and Burnham Sterling has filed a separate motion to lift the case suspension to conduct additional discovery.  Moreover, the pleadings are not yet closed.  Burnham Sterling has filed counterclaims against BBAM, which maintains

that at least one of the counterclaims (if not dismissed) will require additional discovery. The parties presently have twenty-five active motions awaiting ruling from the court. While the court certainly is mindful of the timing of BBAM's motion, it also is aware that this action does not appear to be near summary judgment.  *See Wade v. Kay Jewelers, Inc.*, No. 3:17-cv-990 (MPS), 2018 U.S. Dist. LEXIS 123050, at *3-4 (D. Conn. July 24, 2018) ("Courts in this circuit are 'particularly likely to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment.'") (citing *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013).

Moreover, all the relevant facts related to BBAM's "use in commerce" theory of cancellation or the "failure to convey business" theory of refusal likely would be in Burnham Sterling's control.  BBAM already has stated that it does not seek additional discovery based on its new theories.  Aside from being required to address additional arguments on summary judgment or at trial (neither of which appears to be imminent), Burnham Sterling has not identified the specific prejudice it would suffer from the timing of BBAM's amendments.  "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). While permitting new legal theories two years into an action certainly has the potential to prejudice a party, the context of this action shows that the timing of BBAM's amendments presents no actual prejudice to Burnham Sterling's defense.

Burnham Sterling next claims that it will suffer prejudice because it already has made key litigation strategy decisions, such as determinations about expert reports, responding to discovery requests, and seeking potential third–party discovery.  However,

Burnham Sterling does not specify what it would have done differently had it known about BBAM's alternate theories earlier in the action. Vague claims of prejudice are insufficient to overcome a good cause showing of amending the complaint based on new allegations learned during discovery. The court finds that Burnham Sterling will not suffer any prejudice if BBAM proceeds with its amendments. The motion for leave to amend hereby is **GRANTED.** BBAM is directed to file a "Second Amended Complaint" which incorporates the amendments proposed in its Motion for Leave to Amend.

    **IT IS SO ORDERED.** Signed this 29th day of August, 2022, at Hartford, Connecticut.

*/s/ Omar A. Williams*
Omar A. Williams
United States District Judge
