**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BBAM Aircraft management LP and BBAM US LP, | ) ) | |
|     *Plaintiffs and Counterclaim Defendants,* | ) ) | Case No. 3:20-cv-1056 (OAW) |
| | ) ) | |
|     v. | ) ) | |
| Babcock & Brown LLC, Burnham Sterling & Company LLC, Babcock & Brown Securities, LLC, Babcock & Brown Investment Management LLC, | ) ) ) ) | |
|     *Defendants and Counterclaim Plaintiffs* | ) ) | |

## <u>OMNIBUS RULING</u>

**THIS ACTION** is before the court upon Plaintiffs' / Counterclaim Defendants' ("Plaintiffs" or "BBAM") Motion to Dismiss ("Motion") Second Amended Counterclaim ("SACC"). ECF No. 283. The court has reviewed the Motion, Defendants' / Counterclaim Plaintiffs' ("Defendants") oppositions to the Motion, ECF No. 287, and Plaintiffs' reply in support of the motion, ECF No. 294, and notice of additional authority, ECF Nos. 299.[1] For the reasons discussed herein, the Motion is **<u>GRANTED</u>.**

The court presumes familiarity with the specifics of the allegations in this matter and incorporates by reference the fulsome recount of the alleged facts and procedural history in the court's order of March 25, 2024, docketed at ECF No. 261. For context, this is a trademark infringement case. In its second amended complaint, which is the

---

[1] The parties also have filed several motions to seal certain documents in relation to the Motion and other filings on the docket. *See* ECF Nos. 268, 284, 288, and 307. The court grants all these motions under Local Rule 5(e), finding that the redactions in these filings are narrowly tailored for the purpose of protecting confidential corporate information involving third parties. Further, the court finds that there is no ascertainable date by which these documents should be made public, and therefore the documents filed at ECF Nos. 269, 285, 292, 308, and 309, shall remain under seal until further order of the court.

1

operative complaint, Plaintiffs have asserted seven claims against Defendants related to usage of the trade name "Babcock & Brown" in the field of aviation.   In Defendants' responsive pleading, they raised six counterclaims: five for declaratory relief and one pursuant to California state law against unfair competition ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*  Plaintiffs moved to dismiss all six counterclaims, which motion the court granted.   *See* ECF No. 261.   The court gave Defendants leave to amend the UCL counterclaim, though, which they timely did.   Plaintiffs now move to dismiss the claim again.

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id.*   "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).   However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

California Business & Professions Code § 17200 provides that "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice and

unfair, deceptive, untrue, or misleading advertising." As before, Defendants allege that BBAM is operating as a broker-dealer within the meaning of relevant law and thereby is able to undercut any competition in the Japanese market for aircraft leasing. As before, Plaintiffs argue that the UCL claim cannot be predicated upon a securities transaction; that Defendants lack standing; that the UCL cannot govern foreign transactions, and that Defendants have failed to allege entitlement to equitable relief (which is the only remedy available under the UCL). And as before, the court finds that Defendants have failed to state their claim.

Defendants' claim centers on the partnership activities of BBAM and Nomura Babcock & Brown Co., Ltd. ("NBB"). Those activities, according to Defendants, first involve BBAM identifying an aircraft for sale and negotiating a sale/lease-back arrangement between the seller and a to-be-formed single purpose vehicle ("SPV").[2] Then BBAM and NBB market that SPV as an investment opportunity to investors in Japan, who enter into a securities purchase agreement with NBB. Then BBAM creates a U.S.-based trust to purchase the aircraft, which trust is funded by the monies from the investors. The trust then purchases the aircraft and contributes its interests into the SPV, which then enters into a management contract with BBAM. The subsidiary transactions comprising a completed investment often close contemporaneously on a single closing call with participants in several locations, including California.

---

[2] The single purpose vehicle is a subsidiary entity formed especially to insulate a particular investment. It is its own company, strictly speaking.

According to Defendants, BBAM's participation in this scheme qualifies as acting as an unlicensed broker-dealer in violation of federal and California law.[3]  By not so registering, BBAM allegedly is able to avoid the costs associated with attendant regulatory requirements and consequently gains an unfair advantage over competitors such as Defendants, whose efforts to break into the market, though professedly robust, have proved unfruitful.

The prior dismissal of this claim rested in part on the court's finding that Defendants had failed to show that BBAM's involvement in the securities transactions amounted to anything more than "actions needed to carry out the [securities] transactions . . . ."  ECF No. 261 at 24 (quoting *Loginovskaya v. Batratchenko*, 764 F.3d 266, 274–75 (2d Cir. 2014)).  Nothing in the SACC disturbs that finding.[4]

California law defines a "broker-dealer" as "any person engaged in the business of effecting transactions in securities in this state for the account of others or for that person's own account," including "a person engaged in the regular business of issuing or guaranteeing options with regard to securities not of that person's own issue."  Cal. Corp. Code § 25004(a).  Federal law similarly defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others," and a "dealer" as "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise."  15 U.S.C.A. § 78c(4)(A) and (5)(A).

---

[3] Defendants also allege that Plaintiffs have violated similar laws in other states, but those laws are nowhere argued in Defendants' brief and therefore apparently are not predicates for their UCL claim. Accordingly, the court disregards those other states' laws herein.

[4] The court declines to address the other arguments presented in the parties' briefs, and this ruling should not be construed as implicitly agreeing with any of them.  Rather, the court assumes without deciding that the UCL can apply to the circumstances at bar, that the alleged conduct does not run afoul of the prohibition against extraterritorial application of the UCL, and that Defendants have standing to state the UCL claim.

"In determining whether a particular individual or entity falls within this definition, courts consider whether the individual may be 'characterized by a certain regularity of participation in securities transactions at key points in the chain of distribution.'" *S.E.C. v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003) (quoting *SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984)).

At bottom, all the SACC alleges is that BBAM brokered sale/lease-back contracts between airlines and other companies (SPVs).  But such arrangements are not securities requiring registration under the Exchange Act, even where BBAM knows that the purchasing entity is a financial instrument for investors whose interests in the purchasing entity are securities.  Indeed, the court posits that this is not so far from the norm: companies often purchase large assets in the interests of investors or shareholders whose interests in the purchasing company are securities.  But that fact does not render the sale of every asset to every company a securities transaction.  Moreover, the brokers of such asset sales often are compensated in connection therewith, so the court is not convinced that BBAM is a broker-dealer simply because (1) the Japanese lease arrangements generate money for BBAM, (2) no money is generated if the entire scheme is realized, or (3) the subsidiary parts of the entire scheme often are realized simultaneously on a single conference call.  None of these details changes the fact that BBAM's role in the partnership with NBB is limited to the procurement and management

of an asset, which is perfectly consistent with the joint marketing agreement between BBAM and NBB, *see* ECF No. 94-4,[5] and the court finds nothing untoward therein.[6]

The court acknowledges that Defendants also allege that BBAM identified potential investors and marketed to them, even allegedly communicating with them personally, and it is well-settled that "[i]f a broker takes any part in the negotiations, he cannot be regarded as a middleman, no matter how slight a part it may be." *Rhode v. Bartholomew*, 94 Cal. App. 2d 272, 280 (1949). But even the allegations that BBAM helped identify investors and participated in marketing fall far short of negotiating in the security transactions themselves. *See McKenna v. Edwards*, 19 Cal. App. 2d 327 (1937) (finding that a person who communicated a preliminary offer and acceptance between two parties to a securities transaction was not a broker-dealer); *Freeman v. Jergins*, 125 Cal. App. 2d 536, 547 (1954) (finding an individual was not a broker-dealer even where he met with and discussed the subject transactions with the defendant offerors of securities); *Evans v. Riverside Int'l Raceway*, 237 Cal. App. 2d 666, 675–76 (Ct. App. 1965) (noting the distinction "between a finder (who finds, interests, introduces and brings the parties together for the deal which they themselves negotiate and consummate) and a broker (whose duty is to bring the parties to an agreement on his employer's terms) . . . ."). *Cf. Culbertson v. Schuchert,* 110 F.3d 67 (9th Cir. 1997) (finding an individual a broker-dealer where he "found a potential seller and lobbied the president of one of the seller's subsidiaries to encourage the sale" to his employer). Indeed, BBAM's efforts on these

---

[5] When reviewing a motion to dismiss, the court may consider the complaint, documents attached thereto, documents incorporated by reference therein, documents relied upon in bringing the action that were in the claimant's possession or of which the claimant had knowledge. *See Chambers v. Times Warner*, 282 F.3d 147, 152–53 (2d Cir. 2002).

[6] Indeed, such delineation of responsibilities presumably is how Defendants have attempted to break into the Japanese leasing market although they do not all have licenses themselves.

points appear to be limited to functions that a broker of a major asset normally would perform with respect to that asset.  And none of this participation occurred at any point "in the chain of distribution" of the securities at issue.

Accordingly, Defendants' UCL counterclaim must be dismissed.  And given that this is Defendants' third unsuccessful attempt to state their claim, this dismissal is with prejudice.  Consequently, Defendants' motion to lift the stay of discovery, ECF No. 295, is denied as moot, as is Plaintiffs' motion for a new scheduling order, ECF No. 251.

Separately, Plaintiffs have renewed their request for Rule 11 sanctions in connection with the UCL claim, retreading ground already discussed in the court's denial of their first such motion.  *See* ECF No. 263.  Accordingly, the renewed motion is denied for the same reasons their prior such motion was denied.

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' motion to dismiss Defendants' Counterclaim, ECF No. 283, is **GRANTED**.  Defendants' counterclaim is **DISMISSED with prejudice**.

2. Plaintiffs' Second Motion for Sanctions, ECF No. 238, is **DENIED**.

3. Plaintiff's Motion for Scheduling Order, ECF No. 251, is **DENIED as moot**.  The parties are instructed to confer as to a manageable schedule going forward.  A joint proposed schedule shall be filed on or before **April 15, 2026.**

4. The parties' Motions to Seal, ECF Nos. 268, 284, 288, and 307, hereby are **GRANTED**.

5. Defendants' Motion to Lift Stay, ECF No. 295, is **DENIED as moot**.

**IT IS SO ORDERED** in Hartford, Connecticut, this 31st day of March, 2026.

<u>               /s/              </u>
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE